**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

**v.**

**MISSOURI PACIFIC RAILROAD COMPANY, Appellee.**

**No. 73–1714.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1974.

Decided Feb. 25, 1974.

Rehearing and Rehearing En Banc Denied March 21, 1974.

Susan J. Johnson, Appellate Div., Washington, D. C., for appellant.

Burton M. Greenberg, St. Louis, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and SMITH,* Senior District Judge.

MATTHES, Senior Circuit Judge.

The Missouri Pacific Railroad Company (Company) has established certain qualifications and standards for employment in entry-level clerical positions. One of these standards provides that the Company will refuse to hire any person convicted of a criminal offense other than a minor traffic violation. Buck Green's application to the Company for employment as a night clerk was rejected on September 29, 1970, because

---

* Honorable Talbot Smith, Senior District Judge, Eastern District of Michigan, sitting by designation.

Green's application disclosed that he had been convicted in 1967 of failure to report for military induction, a felony.

On December 22, 1970, the Equal Employment Opportunity Commission (EEOC or Commission) received a letter from Green complaining of the Company's rule prohibiting employment of convicted felons. On January 11, 1971, the Commission deferred the charge to the Missouri Commission of Human Rights. Green filed a verified formal charge with the EEOC on January 20, 1971, in which he contended that the Company's rejection of his employment application constituted religious discrimination since his failure to report for induction had been premised upon an alleged conscientious objector status. Sixty-one days after the charge had been referred to the Missouri Commission of Human Rights, the EEOC assumed jurisdiction and undertook an investigation. On August 9, 1971, Green filed a perfected charge with the Commission alleging that he had been discriminated against "because of my religious creed (Conscientious Objector) and because of my race (Negro)." With regard to the racial allegation, Green elaborated:

I must point out that in addition to any simple racial discrimination on the part of MoPac, my conviction could conceivably have stemmed from my race in that there appears to be a tendency of local boards to deny black claimants conscientious objector classifications possibly because they may not be glib in articulating their beliefs, lack of a black local board member on the black registrant's board, racial prejudice of those existing board members, and when subsequently placed into court—prejudice on the part of the sentencing judge in his failure to recognize any concept of patriotism but his own which is often quite limited.

At the close of the EEOC investigation, the Director of the St. Louis District Office made the following findings of fact, among others:

A policy of not hiring convicted felons has the effect of disqualifying a higher percentage of Negroes than whites.

The violation for which the Charging Party was convicted would not disqualify him from performing the job for which he applied nor would that violation based on religious convictions constitute a "risk" to the Respondent.

The Company duly filed exceptions to the District Director's findings. The Commission concluded:

There is reasonable cause to believe that Respondent is in violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.] by refusing to hire Charging Party and others similarly situated on the basis of their race (Negro), who have conviction records which are unrelated to the nature of Respondent's business * * *, by inquiring into applicant's arrest records, for such policy has a disproportionate impact upon minorities, * * * by maintaining segregated employment classifications which exclude Negroes on the basis of race * * *.

Attempts by the Commission at conciliation with the Company were unsuccessful, and on August 11, 1972, the District Director issued to Green, pursuant to his request, a notice of right to sue within ninety days. On November 7, 1972, Green filed a class action against the Company in the United States District Court for the Eastern District of Missouri alleging racially discriminatory employment practices in violation of Title VII and 42 U.S.C. § 1981, and seeking a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

On April 5, 1973, on the basis of Green's charge of an unlawful employment practice, the Commission also filed suit against the Company in the Eastern District of Missouri, alleging violations of Title VII, including racially discriminatory practices and policies with respect to hiring, assignments, promotion,

on-the-job training, and other terms, conditions and privileges of employment.

On April 13, 1973, District Judge Webster (now Circuit Judge) limited Green's class action to "those Negroes who have been denied employment at defendant's General Office because of defendant's alleged policy of refusing to hire persons arrested and convicted of a criminal offense other than a minor traffic violation." Green's complaint had attempted to include black employees of the Company who allegedly suffered from the maintenance of a racially segregated work force and racially segregated job classifications within the class.

On July 2, 1973, the Company filed a motion to dismiss the Commission's suit on the ground, among others, that the court lacked subject matter jurisdiction in view of Green's previously-filed suit involving substantially the same allegations and arising from the same charge filed with the EEOC.

The Commission, in its memorandum in opposition to the motion to dismiss, argued that the Commission's suit raised broader issues than those raised in the private suit.

The district court, Judge Wangelin, granted the motion, holding:

> To dismiss the instant action would not deprive the plaintiff a remedy as 42 U.S.C. § 2000e–5(f)(1) provides for the Commission's intervention in a civil action brought by the aggrieved party.
>
> The Court can find no purpose in proceeding with two independent lawsuits which arise from the same fact situation, present identical issues and only differ as to the prayer for relief. Therefore, this Court will dis-

miss the instant action without prejudice and the plaintiff may make application to intervene in Cause No. 72 C 702(4).

The Commission has appealed from the order of dismissal.

This case, and others recently decided by the District Court for the Eastern District of Missouri,[1] focus upon the proper scope of the Commission's enforcement powers under the newly-enacted Equal Employment Opportunity Act of 1972 (otherwise referred to as the 1972 Amendments to Title VII of the Civil Rights Act of 1964) (effective March 24, 1972). More specifically, we must decide whether the prior filing and prosecution of a private suit by the charging party pursuant to a "right to sue" notice preclude the later filing of an action by the Commission grounded upon the charging party's complaint and seeking to enlarge and broaden the issues.

▮ For reasons stated below, we affirm the dismissal of this action.

Section 706(f)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1), as amended by the Equal Employment Opportunity Act of 1972, provides in pertinent part:

> If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action * * *. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission * * *. If a charge

---

1. In Crump v. Wagner Electric Corp., 369 F.Supp. 637 (E.D.Mo.1973), Chief Judge Meredith dismissed a suit brought by the charging party after the Commission had filed suit, noting that the private party could obtain relief by intervention in the Commission action.

In EEOC v. Cronin 370 F.Supp. 579 (E.D.Mo.1973), Judge John K. Regan, presented with the identical issue before us, dismissed the Commission's action without prejudice to its right to file an application to intervene in the pending private action. Accord, EEOC v. Union Oil Co. of California, 369 F.Supp. 579 (N.D.Ala.1974).

filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section * * *, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission * * * shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge * * * by the person claiming to be aggrieved * * *. Upon timely application, the court may, in its discretion, permit the Commission * * * to intervene in such civil action upon certification that the case is of general public importance.

In general, the procedure may be summarized as follows:

1. A charge must be filed within 180 days after the occurrence of an alleged unlawful employment practice.

2. If the Commission finds reasonable cause to believe that the charge is true, and conciliation attempts prove unsuccessful, the Commission may bring suit against the respondent within 180 days of the filing of the charge. The charging party shall have the right to intervene in the Commission's suit.

3. If the Commission fails to file an action within 180 days, it shall notify the charging party.

4. Within 90 days after receipt of notice, the charging party may bring a civil action against the respondent. Should a private action be brought, the Commission may intervene, in the discretion of the court, upon certification that the case is of general public importance.

The scheme of the statute itself, as thus described, negates the Commission's double-barreled approach. Once either the Commission or the charging party has filed suit, § 2000e–5(f)(1) speaks only in terms of intervention—the absolute right of the charging party to intervene if the Commission elects to file suit within 180 days; the permissive right of intervention on the part of the Commission in the private action. The statute cannot be read to warrant duplicitous lawsuits when both actions find their genesis in one unlawful employment practice charge.

Moreover, although "the legislative history of Title VII is in such a confused state that it is of minimal value," Sanchez v. Standard Brands, Inc., 431 F.2d 455, 460 (5th Cir. 1970), the record does reveal that Congress was concerned about duplicitous suits. The original House and Senate bills which led to the adoption of the 1972 amendments authorized the Commission to prosecute violators of Title VII through cease and desist orders. When the Act was passed by both Houses, court enforcement provisions had been substituted for the cease and desist powers. The House report discusses the interrelationship between the originally-proposed cease and desist powers of the Commission and the private right of action as follows:

The committee was concerned about the interrelationship between the newly created cease and desist enforcement powers of the Commission and the existing right of public action. It concluded that duplication of proceedings should be avoided. The bill, therefore, contains a provision for termination of Commission jurisdiction once a private action has been filed (except for the power of the Commission to intervene in the private actions). It contains as well a provision for termination of the right of private action once the Commission issues a complaint or enters into a conciliation or settlement agreement which is satisfactory to the Commission and to the person aggrieved.

H.R.Rep.No.92–238, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Admin.News at 2148.

Finally, we observe that in EEOC v. Cleveland Mills Co., 364 F.Supp. 1235, 1238 (W.D.N.C.1973), the Commission apparently agreed with our view that the statute does not contemplate duplicitous suits:

> The Commission admits that it has no power to institute an action during the ninety day period in which the aggrieved party has the exclusive right to sue. However, it contends that the power to institute action reverts to the Commission after the expiration of the ninety day period *if the aggrieved [party] has not filed suit.*

(Emphasis supplied.)

■ Thus we conclude that, once the charging party has filed suit pursuant to a "right to sue" notice, the Commission is relegated to its right of permissive intervention.[2] We are fully confident that Judge Nangle, before whom the *Green* case is now pending, in the exercise of his sound discretion, will permit intervention and enlargement of the scope of the action by the Commission if necessary to the rendering of full and complete justice.

The *judgment of dismissal is affirmed.*

HEANEY, Circuit Judge (concurring).

I would go a step further than the majority and direct, rather than suggest, that the scope of the *Green* case be broadened to include those issues raised by the Commission. In my judgment, our opinions in Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970), and Reed v. Arlington Hotel Company, Inc., 476 F.2d 721 (8th Cir. 1973), require this result. I would take this course not because I expect the District Court to reject the suggestion of the majority but rather because the precedential value of its decision would be enhanced were we to require what our prior cases dictate.

In *Parham,* we said:

> * * * [A] single charge of employment discrimination under Title VII found by the EEOC to rest upon reasonable grounds may serve to launch a full-scale inquiry into the alleged unlawful motivation in employment practices. * * * (Citation omitted.)

Parham v. Southwestern Bell Telephone Co., *supra* at 425 of 433 F.2d.

We applied the same reasoning in *Reed:*

> * * * In *Parham,* we allowed an individual who claimed that he had not been hired because of racial discrimination to bring a class action, attacking employment discrimination generally. It requires no extension of *Parham* to give a discharged employee the same privilege. As a black and a former employee, the plaintiff was subject to the same racially discriminatory policies as other members of the class. "The very nature of a Title VII violation rests upon discrimination against a class characteristic, * * *." (Citation omitted.)

Reed v. Arlington Hotel Company, Inc., *supra* at 723 of 476 F.2d.

If, as we held in the two above cited cases, an individual—through a class action—may attack employment discrimination generally, the Commission charged with the broader responsibility of eliminating discriminatory employment practices, must also be allowed to bring the broader issues before the court.

ON PETITION FOR REHEARING

PER CURIAM.

In its petition for rehearing, the Commission apparently interprets our opinion as implicitly holding that the Com-

---

2. On March 24, 1974, the power of the Attorney General to bring pattern or practice suits will be transferred to the Commission, thereby strengthening its enforcement arsenal. Civil Rights Act of 1964 § 707, 42 U. S.C. § 2000e–6, as amended by the Equal Opportunity Act of 1972.

mission is without power, regardless of the circumstances, to bring an independent suit more than 180 days after the filing of the charge upon which the suit is based. A careful study of our opinion will disclose that we neither considered nor decided this question. Our opinion is necessarily confined to the rather narrow issue of whether the Commission is entitled to bring an independent action after the charging party has already filed suit pursuant to the statute.

Subject to the above clarification, the petition for rehearing by the panel is denied.