George James **WILLIAMS** et al.

v.

**NEW ORLEANS STEAMSHIP
ASSOCIATION** et al.

**Civ. A. No. 71–873.**

United States District Court,
E. D. Louisiana.

Jan. 18, 1972.

George M. Strickler, Jr., Elie, Bronstein, Strickler & Dennis, New Orleans, La., for plaintiffs.

Andrew P. Carter, Monroe & Lemann, New Orleans, La., for New Orleans Steamship Assn., and others.

Victor H. Hess, Jr., Jackson & Hess, New Orleans, La., for International Longshoremen Assn., Local 1418, Local 1683 Sacksewers, Sweepers, Waterboys & Coopers, I.L.A., Local 1419, Local 1802.

Alvin J. Liska, Liska, Exnicios & Nungesser, New Orleans, La., for Local 1418 General Longshore Workers, I.L.A.

HEEBE, District Judge:

The instant action was instituted pursuant to § 706(e) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e). Each plaintiff, having previously filed charges with the Equal Employment Opportunity Commission, here sues for himself individually, and as a representative of the class of other employees similarly situated, seeking relief for alleged discrimination on the basis of race in violation of § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). The suit is brought against the New Orleans Steamship Association, 28 member companies and the International Longshoremen's Association, Local 1418 General Longshore Workers, I.L.A., Local 1419 General Longshore Workers, I.L.A., Local 1802 Sacksewers, Sweepers, Waterboys and Coopers, I.L.A., and Local 1683 Sack-

sewers, Sweepers, Waterboys and Coopers, I.L.A. The basic allegations of discrimination set forth in the complaint are:

(1) that defendants have segregated and classified employees in such a manner so as to deprive Negroes of employment opportunities by excluding them from work as carpenters, clerks, safety men, timekeepers and superintendents, in addition to employing a disproportionately small number of Negroes as lift truck operators and foremen;

(2) that white employees in all job classifications are assigned more work and work of a less onerous nature than their Negro counterparts;

(3) that Negroes are denied equal promotional opportunities to supervisory jobs.

It is further alleged that Locals 1418 and 1419 and Locals 1802 and 1683 are segregated by race which adversely affects plaintiffs because such segregation provides one means by which preference in job assignments is given to white employees.

The defendants have filed various motions which are now before this Court for disposition, oral argument having been heard and legal memorandum submitted. The motions to be considered are:

(1) Motion of twelve of the named member companies [1] of the New Orleans Steamship Association to dismiss for lack of jurisdiction;

(2) Motions on behalf of all defendants for summary judgment or alternatively to dismiss the class action;

(3) Motion of defendant unions to dismiss the complaint against them on the ground that the Court lacks jurisdiction over the individual defendants and over the subject matter of the suit.

■■ It is the position of the twelve defendant member companies in their motion to dismiss for lack of jurisdiction that because none of these companies employs twenty-five or more employees (which is supported by affidavits), Title VII of the Civil Rights Act of 1964 is inapplicable to them. Under 42 U.S.C. § 2000e, an employer who would be subject to the proscriptions of 42 U.S.C. § 2000e–2 is defined as "a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." However, the EEOC has taken the position that if establishments are part of an integrated enterprise, they may be treated as a single employer for Title VII coverage, i. e., if the total number of employees at all establishments is equal to the requisite number, each establishment is covered although individually they may not have the requisite number of employees for Title VII coverage. EEOC Decision, No. 71–1537 (March 3, 1971), 1 EPD ¶ 6235; Opin. Ltr. 1/5/66; GC 681–65. Some of the criteria which the EEOC has applied in determining whether an enterprise is integrated for purposes of calculating the number of its employees are interchange of employees, centralized control of labor relations and standards which have been used by the NLRB. GC Opin. 9/30/65; Opin.Ltr. 11/12/65, GC 397–65; Opin.Ltr. 4/29/66, M 154–66. See, NLRB v. Local 3, I.B.E.W., 362 F.2d 232 (2d Cir., 1966). Although no case has been found where a court has applied this theory to a Title VII suit, we are persuaded by the fact that courts ought to and do give great weight to an agency's interpretation of the statute that it administers. Local 189, United Papermakers and Paperworkers v. United States, 416 F.2d 980 (5th Cir.1969). Opinion letters signed by the General Counsel on behalf of the Commission are inter-

---

1. Abingdon Steamship Corporation, Riverside Stevedores, Inc., Pelican Stevedoring Co., Inc., Louisiana Stevedores, Inc., Fowler & McVitie, Inc., Insco Lines, Ltd., Southern Dock Co., Inc., Kenneth LeBlanc, Inc., Texas Stevedores, Inc., Gulf Shipping Co., United States Stevedore Corp. and Dixie Stevedores, Inc.

pretations of the Act by the Commission. C.F.R. § 1601.30; Local 189, United Papermakers and Paperworkers v. United States, *supra.*

■ Plaintiffs have pointed out, and it has not been refuted by the defendants, that the New Orleans Steamship Association controls employment on the waterfront and establishes uniform employment policies and practices applicable to all member companies. It owns and operates a central hiring hall at which all longshoremen are hired on a day-to-day basis to work for the various member companies. The New Orleans Steamship Association derives its broad authority by delegation from the member companies. In view of this, the Court finds itself in agreement with the plaintiffs that for purposes of Title VII coverage the individual companies which make up the New Orleans Steamship Association should be treated as a single employer. Were we not to, and were it subsequently found that the Association was in violation of Title VII, it would appear to be an anomalous situation, and one which would not comport with the policy of the Act, for the Court to fashion relief which would apply to some of the member companies but not to all. Consequently, the Court finds that the motion of the twelve member companies to dismiss for lack of jurisdiction should be denied.[2]

■ Several grounds are relied upon by the defendants as the basis for the motion for summary judgment or in the alternative to dismiss the class action. Defendants contend that they are entitled to summary judgment because plaintiffs have not been discriminated against, i. e., that a comparison of the yearly hours which they worked with that of the average yearly hours worked by others, indicates that they have worked more than their share.[3] Also, that plaintiff Williams has worked, in 1969–1970, more hours as a foreman than as a longshoreman.[4] Further, they contend that they are alternatively entitled to a dismissal of the class action because plaintiffs not having been discriminated against, for purposes of a class action, cannot fairly represent the interests of the class. However, even assuming the defendants to be correct, these assertions go basically to only one of the allegations of discrimination in the complaint—"white employees in all job classifications are assigned more work . . . ."—and is, therefore, not dispositive of the allegations of discrimination in the complaint, which includes types of work that Negroes are alleged to be excluded from, exclusion from promotions, etc. Of course, the defendants have the burden of positively and clearly demonstrating that there is no genuine issue of fact and any doubt as to the existence of such an issue should be resolved against them. "A long line of cases have held that summary judgment should not be granted if there is the 'slightest doubt' as to the facts." National Screen Service Corp. v. Poster Exchange, Inc., 305 F.2d 647 (5th Cir.

2. This Court has previously granted a motion of the plaintiffs to amend their complaint in order to state a cause of action under the Civil Rights Act of 1866, 42 U.S.C. § 1981. In view of the position which the Court takes with respect to coverage under Title VII, it will not consider the effect of the amendment on this motion.

3. The affidavits, however, are not conclusive on this point. In the affidavit filed by defendants, average hours worked for 1968–1969 and 1969–1970 are given for men classified as "A" Longshoremen and for "A" Sack-sewers, neither classification being defined. In addition, the affidavit gives yearly averages for "all registered Longshoremen of all classifications" and "all registered Sack-sewers, etc.," which are not broken down as to locals as the previous figures are. These figures are, therefore, no more meaningful than the prior ones. Even if plaintiffs have worked more hours than the total average, it does not mean that they have worked as many hours per year as their white counterparts, the average hours of which are not discernable from the affidavit.

4. However, Williams stated on deposition that since the filing of the complaint he has not received work as a foreman.

1962). Since we go further and find that there are uncontroverted allegations in the complaint at this stage, we find that summary judgment is not proper. We also note that "[e]ven in cases where the movant has technically discharged his burden, the trial court in the exercise of a sound discretion may *decline* to grant summary judgment." National Screen Service Corp. v. Poster Exchange, Inc., *supra*, at p. 651. In such a case as this, where plaintiffs have alleged an industry-wide practice of racial discrimination in violation of Title VII and where the EEOC apparently found some merit in the charges, even if defendants had discharged their burden, we might find this a proper case in which to decline the motion for summary judgment in order that plaintiffs have the opportunity to further develop the facts on which they rely.

■■ The Court does not find the alternative motion to dismiss the class action any more convincing. In order to bring a class action under Rule 23, plaintiffs are required to meet all the conditions set forth in Rule 23(a) and any of the three conditions set forth in Rule 23(b). This Court is of the opinion that plaintiffs have met the requirements of Rule 23(a) and of Rule 23(b)(2). We follow the generous view of the Fifth Circuit taken in Title VII cases. The threat of a "racially discriminatory policy" has been stated to be a "question of fact common to all members of the class," permitting class action to be maintained by an aggrieved employee who has alleged acts of discrimination against him as well as a general practice of discrimination. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); Jenkins v. United Gas Corporation, 400 F.2d 28 (5th Cir. 1968).

Defendants also place great reliance on the fact that the charges of plaintiffs Turner and Williams before the EEOC were consolidated with approximately twelve other employees who had filed charges against the New Orleans Steamship Association, various employers, and the six local unions, alleging discrimination by them. Subsequently, a settlement agreement, which was approved by the EEOC, was entered into between ten of the fifteen charging parties and all of the named member-company defendants, except one.

The plaintiffs herein refused to sign this agreement. Defendants take the position, on brief, that "the Complaint in this matter is nothing more than a consolidated and reworked charge of discrimination such as was filed with the EEOC," and that the EEOC settlement agreement "specifically addressed itself to correction of any supposed abuses in employment opportunity within the Port of New Orleans." Defendants state further that the Court should not "permit a dissident minority within the class of supposed discriminatees to sue under Title VII, where the vast majority of the complainants *and the EEOC* have agreed to a voluntary settlement . . . ." The exact legal theory upon which the defendants rely is not apparent; however, they submit that on the basis of the settlement agreement this Court should grant the motion for summary judgment, alternatively the motion to dismiss the class action, and further alternatively dismiss all allegations in the complaint which were before the EEOC and settled by that agency.

■■ With respect to the individual claims of the plaintiffs, it is well settled that the settlement agreement can have no effect on their right to bring suit in the district court and this is true irrespective of how favorable that agreement might be. To hold otherwise would be to make the EEOC the final arbiter of an individual's Title VII grievance whereas Congress has given the federal judiciary the ultimate power to determine Title VII rights. The Commission has not been given the power of adjudication. Hutchings v. United States Industries, Inc., 428 F.2d 303 (5th Cir.1970); McGriff v. A. O. Smith Corporation, 51 F.R.D. 479 (D.S.C. 1971); *see, also*, Employment Discrimination and Title VII of the Civil Rights

Act of 1964, 84 Harv.L.Rev. 1109, 1249, fn. 301.

■ Turning next to the effect of the settlement agreement on the class action aspect of this suit, which we have previously found to be appropriately maintainable by the plaintiffs, we further find that plaintiffs may not be barred from the maintenance of such class action because of the existence of the settlement agreement. A contrary determination would be inconsistent with Rule 23(e) of the Federal Rules of Civil Procedure which provides:

> "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

See, Banks v. Lockheed-Georgia Company, 46 F.R.D. 442 (N.D.Ga.1968). In addition, the defendants claim, on brief, that the signatories to the agreement constituting the majority of the charging parties more properly represent the class than the plaintiffs and further rely on the corrective action which was agreed upon. However, although the settlement may achieve some class relief, it does not comport with the relief sought by plaintiffs in their complaint. As one example, the relief which was agreed upon in the settlement agreement, and approved by the EEOC, to meet the charge before the Commission that Negroes were denied equal promotional opportunities was the pledge that in filling future job vacancies for foreman, race would be disregarded as a factor. However, in their complaint, the relief which plaintiffs seek for such alleged discriminatory practice would be that Negroes be given a preference until such time as the ratio of Negro to white employees in any such job classification equals the ratio of Negro to white of all the member companies of the New Orleans Steamship Association. We note that, after a full hearing, should alleged discriminatory practices be found to exist, this Court has "wide discretion in modeling [a] decree to insure compli-

ance with the Act." Hutchings v. United States Industries, Inc., supra. Therefore, the Court should wait until such time to determine whether the agreement is sufficient to rectify any violation of the Act which may be found to exist. If it should prove out that the agreement has satisfied the Act and that defendants are operating within the terms of the agreement, this Court may withhold injunctive relief in deference to the voluntary agreement of compliance. In this manner, the work of the Commission would not be undermined. See, McGriff v. A. O. Smith Corporation, supra.

In addition to joining with the other defendants in the motions which have been discussed, the defendant International Longshoremen's Association (I.L.A.) and the named defendant local unions base their motion to dismiss for lack of jurisdiction over the individual defendants on the grounds that neither plaintiffs Hayes nor Turner named any of these defendants in their charge before the EEOC, and that plaintiff Williams failed to charge the I.L.A. However, a copy of Williams' charge clearly indicates that the parties charged by him are "International Longshoremen's Association, Locals 1418, 1419, 1497, 854, 1802 and 998"; Hayes' charge indicates that he named Local 1683. As to Turner, plaintiffs assert that the separate charge which he filed naming Locals 1683 and 1802 as parties who discriminated against him has been lost or misplaced by the EEOC. Plaintiffs have filed an affidavit sworn to by Glenn P. Clasen, Director of the New Orleans District Office of the EEOC, to the effect that the Commission's records indicate that Turner filed a charge against Locals 1683 and 1802 alleging that the locals are segregated on the basis of race but that the Commission is unable to locate this charge. There are no counter affidavits nor have defendants deposed the Director in order to overcome this affidavit, although counsel for the locals has stated that he finds the unexplained loss of this charge of

which he has no copy difficult to comprehend. On the present state of the record, however, this Court does accept the affidavit as sworn to.

The second basis for the unions' motion to dismiss as to them is for lack of jurisdiction over the subject matter in that in his complaint Williams "stated that Local 1418 was virtually all white, which is an admission that it is not segregated by race." We find no merit in this contention. Maintenance of separate local unions for white and Negro employees is violative of Title VII of the Civil Rights Act of 1964. Hicks v. Crown Zellerbach Corporation, 310 F.Supp. 536 (E.D.La.1970); United States v. Local 189, United Paper Makers and Paper Workers, 301 F.Supp. 906 (E.D.La.1969), aff'd 416 F.2d 980 (5th Cir.1969); United States v. International Longshoremen's Association, et al., 319 F.Supp. 737 (D.Md.1970). Whether or not the locals are segregated as alleged in the complaint is a question of fact which has not been controverted by defendants at this point. An allegation that a union is "virtually all white" can mean no more than that there is token integration. We agree with the Court in United States v. International Longshoremen's Association, et al., *supra*, at p. 741, that where a local has always been maintained as a white local with only a token number of Negro members, such a local would be considered segregated. Whether or not this is true in this case will have to await further development of the facts.

On the basis of the foregoing discussion of the motions presently before this Court,

It is the order of the Court that the motion of twelve of the named member companies of the New Orleans Steamship Association to dismiss for lack of jurisdiction, the motions on behalf of all defendants for summary judgment or alternatively to dismiss the class action and the motion of defendant unions to dismiss for lack of jurisdiction, be, and the same are hereby, denied.