Johnnie A. REED, Appellant,

v.

ARLINGTON HOTEL COMPANY, INC., Appellee.

No. 71–1726.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1972.

Decided March 21, 1973.

Rehearing and Rehearing En Banc Denied April 26, 1973.

Richard L. Mays, Little Rock, Ark., for appellant.

Philip K. Lyon, Little Rock, Ark., for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and BOGUE,* District Judge.

HEANEY, Circuit Judge.

Johnnie A. Reed, a black, brought this suit on behalf of himself and blacks as a class, contending that the defendant, Arlington Hotel, Inc., of Hot Springs, Arkansas, has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), through racially discriminatory employment practices.

Reed worked as a bellman at the Arlington Hotel. On February 17, 1969, the chief bellman ordered him and two other black bellmen to help unload a truck. All three refused on the grounds that· such a task was not included as part of a bellman's duties. Reed and the others were immediately discharged.

On March 7, 1969, Reed filed a charge with the Equal Employment Opportunity Commission alleging a violation of Title VII. On November 19, 1970, Reed received from the E.E.O.C. notice of his right to sue. On December 18, 1970, he filed this action.

During the course of the trial, the hotel entered into a settlement agreement with the E.E.O.C. Two of those employees discharged in the February,

1969, incident accepted the settlement. Reed rejected it because it included no provision for back pay.

While the defendant's discharge of Reed provided the impetus for the present action, the additional allegations that the hotel has discriminated against all blacks in employment rested upon the hotel's record of maintaining segregated job categories and discriminatory recruitment policies.

After a trial, the court dismissed both Reed's individual action for back pay and injunctive relief and the class action.

## I. REED'S ACTION

■ The trial court held that Reed was fired for insubordination. There is substantial evidence to support that conclusion. When Reed protested the order on the grounds that the unloading was not the work of a bellman, he was told he would be fired if he persisted in his refusal. Moreover, it is clear that the assignment was not a racially discriminatory one. The record shows that the unloading was carried out by whomever was available, whether black or white. There is no evidence to support Reed's contention that he was singled out to do the job because he was black. Employees in all departments did the job from time-to-time, and Reed was in no position to claim special privilege.

## II. CLASS ACTION

■ Before trial, the defendant took the position that the plaintiff, as an employee discharged before the action was commenced, had no standing to raise the issue of discrimination against blacks generally. The defendant relied on two District Court decisions—Burney v. North American Rockwell Corporation, 302 F.Supp. 86 (C.D.Cal.1969), and Hyatt v. United Aircraft Corp., Sikorsky Aircraft Div., 50 F.R.D. 242 (D.Conn. June 11, 1970).[1] The trial court re-

---

* District of South Dakota, sitting by designation.

1. Accord, Tolbert v. Daniel Construction Company, 332 F.Supp. 772, 775 (D.S.C.

served its ruling on the question until after trial, at which time it held that it was proper for the plaintiff to represent blacks as a class. The court stated:

" * * * [R]ecently the courts [have held] * * * that even an employee who has been discharged, * * * and recognizing that he would not ever go back to work, still has a standing to bring a class action for all those in the same situation * * *. And I think the courts have appropriately pointed out that if this kind of an individual would be prevented from bringing class actions as the rules permit, there would be a windfall for the employer, and when any such matter was coming up, all they would have to do is discharge the employee * * *. That reasoning is logical. So this Court follows the rule that has been more recently established, that a discharged employee does have standing to bring class action where all of the other criteria of the rules have been met. * * * "

The trial court's holding on standing is correct. We have stated that:

" * * * a single charge of employment discrimination under Title VII found by the EEOC to rest upon reasonable grounds may serve to launch a full scale inquiry into the alleged unlawful motivation in employment practices. * * * "

Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 425 (8th Cir. 1970). In *Parham*, we allowed an individual who claimed that he had not been hired because of racial discrimination to bring a class action, attacking employment discrimination generally. It requires no extension of *Parham* to give a discharged employee the same privilege. As a black and a former employee, the plaintiff was subject to the same racially discriminatory policies as other members of the class. "The very nature of a

Title VII violation rests upon discrimination against a class characteristic, * * *." Parham v. Southwestern Bell Telephone Co., *supra* at 428.

The trial court's holding is also in accord with decisions of those Courts of Appeals which have ruled on the matter. Tipler v. E. I. duPont deNemours and Co., 443 F.2d 125, 130 (6th Cir. 1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124 (5th Cir. 1969). See, Brown v. Gaston County Dyeing Machine Company, 457 F.2d 1377, 1387, n.8 (4th Cir. 1971) (J. Dupree, concurring), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972); *Cf.*, Graniteville Co. (Sibley Div.) v. Equal Employ. Op. Com'n, 438 F.2d 32, 35 (4th Cir. 1971).

We next consider, on the merits, the trial court's dismissal of the class action. The court held, in substance, that while the statistics showed that discrimination had taken place, dismissal was appropriate because the defendant's current hiring practices sufficiently complied with Title VII. We disagree.

■ The statistics which show segregated departments and job classifications establish a violation of Title VII. Under these circumstances, outright dismissal is inappropriate. See, Parham v. Southwestern Bell Telephone Co., *supra* 433 F.2d at 426.

Thirteen percent of Hot Springs' population was black in 1970. Yet, at the time that suit was filed, five of the hotel's eleven departments, providing approximately fifty-eight jobs, were all white and had traditionally been so. Only two department heads were black. The all-white departments included the higher paying job categories found in the front office, accounting and maintenance departments. One department was all black. Another department had seventeen blacks and three whites. While porters and bellmen performed

1971); White v. Gates Rubber Company, 53 F.R.D. 412 (D.Colo.1971). See, Joslin Dry Goods Co. v. Equal Employ. Opportunity Com'n, 336 F.Supp. 941, 948 (D.

Colo.1971). But see, Mack v. General Electric Company, 329 F.Supp. 72, 75 (E.D.Pa.1971).

substantially the same duties, they were divided into two separate departments —each one racially segregated. While turnover in some of these segregated departments was relatively low; in others, it was higher. That some departments were integrated does not change the facts that blacks have been substantially deprived of their Title VII rights.

There was testimony which indicated that even in those departments which were not completely segregated, specific positions were limited to persons of one race. For instance, while the maids in the housekeeping department have usually been black, those persons who work in the linen room have always been white. In the food department, the waiters were all black while the food checkers and cashiers were all white.

In addition, the defendant's recruitment practices at the time suit was brought were racially discriminatory in view of its history of racial segregation. See, Brown v. Gaston County Dyeing Machine Company, *supra*; Parham v. Southwestern Bell Telephone Co., *supra*.

The evidence shows that the hotel had not established uniform recruiting procedures. Sometimes the state employment service was used, but more often recruiting was done by word of mouth. The hotel had also failed to establish objective criteria for evaluating applicants. Recruitment was left to the individual department heads who decided how to publicize a specific job opening and who subjectively determined an applicant's qualifications for employment. Such unstandardized and subjective procedures lend themselves to arbitrary and discriminatory hiring. See, Brown v. Gaston County Dyeing Machine Company, *supra* 457 F.2d at 1382, 1383.

■ The evidence also shows that the defendant did not post notices of job openings in the hotel, and news of them was instead passed along by word of mouth. Under the circumstances, this constituted a discriminatory employment practice. A department head may easily discriminate against black employees by failing to notify them of the opportunities for transfer and promotion in the segregated departments. Furthermore, delays in notification may occur which will effectively preclude the black employees from being considered for a job vacancy. See, Brown v. Gaston County Dyeing Machine Company, *supra* at 1382, 1383.

■ It has been suggested that dismissal was appropriate because the defendant hired a few blacks in previously all-white positions during the course of the trial or shortly before it. We reject this contention. The number of blacks hired was insubstantial. Recruiting procedures continued to violate Title VII. Further, even if substantial changes had occurred in the hotel's hiring policies, outright dismissal would have been inappropriate because such change " 'in the face of litigation [is] equivocal in purpose, motive and performance.' [Jenkins v. United Gas Corporation, 400 F.2d 28, 33 (5th Cir. 1968)]." Parham v. Southwestern Bell Telephone Co., *supra* 433 F.2d at 426.

■ On appeal, it was also suggested that the settlement agreement between the E.E.O.C. and the defendant has mooted this action even though the plaintiff has rejected it. We also reject this contention. Cox v. United States Gypsum Company, 409 F.2d 289, 291 (7th Cir. 1969); Williams v. New Orleans Steamship Association, 341 F.Supp. 613, 617 (E.D.La.1972); Austin v. Reynolds Metals Company, 327 F.Supp. 1145, 1151 (E.D.Va.1970).

" * * * To hold otherwise would be to make the EEOC the final arbiter of an individual's Title VII grievance whereas Congress has given the federal judiciary the ultimate power to determine Title VII rights. The Commission has not been given the power of adjudication. Hutchings v. United States Industries, Inc., 428 F.2d 303 (5th Cir. 1970); McGriff v. A. O. Smith Corporation, 51 F.R.D. 479 (D. S.C.1971); *see also,* Employment Discrimination and Title VII of the Civil

Rights Act of 1964, 84 Harv.L.Rev. 1109, 1249, fn. 301."

Williams v. New Orleans Steamship Association, *supra* 341 F.Supp. at 617–618. Dismissal of the class action on the basis of the settlement agreement would be particularly inappropriate in view of Rule 23 of the Federal Rules of Civil Procedure which provides:

" 'A class action shall not be dismissed or compromized without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.' *See*, Banks v. Lockheed-Georgia Company, 46 F.R.D. 442 (N.D.Ga. · 1968). \* \* \* "

*Id.* at 618.

■ We can, however, consider the settlement agreement in determining the relief that will be granted. *Cf.*, Parham v. Southwestern Bell Telephone Co., *supra*.

### III. REMEDY

In fashioning a remedy, it is our duty to "so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1964), quoted in Carter v. Gallagher, 452 F.2d 315, 328 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). " 'The crux of the problem is how far the employer must go to undo the effects of past discrimination.' " In the Matter of Bethlehem Steel Corporation, Respondent, Decision of the Secretary of Labor, C.C.H. Employment Practices Guide § 5128 at 3253 (January 15, 1973).

As we have indicated, the hotel has entered into a settlement agreement with the E.E.O.C. In part, this agreement will govern the hotel's recruitment procedures. The relevant provisions state:

"4. All hiring, assignment, promotions, transfers, dismissals and other conditions of employment, shall be maintained and conducted in a manner which does not discriminate on the basis of race, color, sex, religion, or national origin in violation of Title VII of the Civil Rights Act of 1964.

\*　\*　\*　\*　\*　\*

"9. The Company agrees to take affirmative action to insure that traditional patterns of recruitment, hiring and job assignment which may have been discriminatory are not perpetuated. Such affirmative action shall include, but not be limited to:

"a) notification in writing of this restatement of policy to all supervisory personnel and all others having hiring or job placement authority.

"b) recruitment efforts shall be conducted so as to insure applicants from minority sources are encouraged to apply. To implement this, Respondent agrees to notify, in writing, all routine sources of recruitment, such as public and private employment agencies. All newspaper advertisements for help wanted are to bear the legend 'AN EQUAL OPPORTUNITY EMPLOYER.'

"10. When using word of mouth recruitment, Respondent agrees that vacancies will be made known to minority employees with a request to publicize such vacancies in their community.

"11. Respondent agrees to recruit for applicants from minority group sources to apply for any vacancies occurring in any currently all-white job categories, such as desk clerk, cashier, telephone operator, porter, parking attendant and office clerical. The selection of the applicant shall be made without discrimination based on race, color, sex, religion or national origin."

This agreement will go a long way to eliminate discrimination in the hiring of new personnel by formally committing the hotel to a policy of equal opportunity, and by providing the means for informing the black community of that policy and of particular job openings. In addition, if the hotel is to fully com-

ply with Title VII, it must adopt written objective criteria for the evaluation of job applicants.

The agreement, however, does not adequately protect the rights of those blacks presently working for the hotel. It is these blacks who have suffered the most from the indignities of segregation and the denial of opportunities for transfer and promotion.

The company has stated that those employed in the porters' department (all white) and the bellman department (all black) perform substantially the same job, and the separation into two departments is largely based on tradition. Under these circumstances, the hotel must immediately eliminate the distinction between the two departments and permit employees, without regard to race, to perform all the work within either department. Such action will not result in the displacement of any white workers, nor will it significantly interfere with the functioning of the hotel.

█ The record indicates that the hotel's other departments are organized according to the distinct services they provide. To immediately merge any of the all-white and all-black departments is not appropriate because it would result in totally disrupting the normal functioning of the hotel. We also do not believe that the immediate transfer of some black employees into previously all-white departments is appropriate because this would result in present white employees losing their jobs. Instead, present employees of both races must be given a preference in the filling of job openings as they arise. Notices of such openings must be posted for a reasonable time, and the opening filled by the employee with the longest service with the hotel who is qualified for the position and who desires it.

Finally, the trial court should retain jurisdiction to see that the settlement agreement and this Court's decision are carried out.

█ The plaintiff is entitled to reasonable attorney's fees, including services for this appeal, to be allowed by the District Court as authorized by 42 U.S. C.A. § 2000e–5(k).

Affirmed in part; reversed in part; and remanded for action consistent with this opinion.