**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**The UPJOHN CORPORATION and Laboratory Procedures South, Inc.**

**Civ. A. No. C77–231A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 9, 1977.

Christopher L. Williams, Atlanta, Ga., for plaintiff.

William B. Gunter, R. Lawrence Ashe, Jr., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., Mark S. Dichter, Allen J. Gross, Morgan Lewis Bockus, Philadelphia, Pa., for defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This case concerns alleged discriminatory practices of Laboratory Procedures South, Inc., a subsidiary of the Upjohn Corporation. This action is instituted pursuant to the Civil Rights Act of 1964, § 706(f)(1) as amended 42 U.S.C. § 2000e–5(f)(1). Jurisdiction arises under 42 U.S.C. § 2000e–5(f)(3). Pending before the court is defendants' motion to dismiss all allegations against Upjohn and eliminate those contentions based upon the charge of Terry Benischek.

This litigation is premised upon two separate charges filed with the Equal Employment Opportunity Commission. ("EEOC"). The first charge was filed on September 25, 1973 by Mary A. Boney, a black female, against Linden Laboratories ("Linden"), the predecessor of Laboratory Procedures South ("LPS"). Ms. Boney had been hired on May 8, 1972 and was terminated on November 5, 1973. The original charge alleged:

> I received a verbal promise of a raise, to be retroactive; I was given a raise substantially less than that promised and it was applied prospectively only. White employees as well as black male employees with less experience and/or education and lighter work loads have begun and continued to maintain higher salaries than I received.

On November 7, 1973, Ms. Boney filed an amended charge alleging:

> I was discharged, allegedly because of the reduced quality of my work and for reporting to work late. I believe that I was really discharged in retaliation for my filing a complaint with the Equal Employment Opportunity Commission.

Finally, on January 20, 1975, Ms. Boney filed a third charge in which she alleged:

> I believe that the above-mentioned company after discharging me because I filed a charge with the E.E.O.C. continues to harass me for filing the charge by

giving me bad references which made it impossible for me to get a job as a sales representative. And also, by failing to respond to an inquiry from the New York Board of Health I was unable to get my Medical Technologist license and was forced to work in research for less money than I would have been able to make in a medical lab or hospital.

The EEOC investigated the allegations in all three of Ms. Boney's charges and, on December 2, 1975, issued its determination.

In its determination the EEOC stated that the charging party alleged that respondent committed unlawful employment practices in violation of Title VII in that her initial hire rate as a technician and amount of salary increases were less than white and black males due to discrimination based on race and sex. The determination further noted that the charging party also alleged that respondent discharged her, gave her negative employment references, and failed to verify her employment in retaliation for her having filed charges with the Commission. In its determination the Commission found that:

1. "there is reasonable cause to believe that Respondent paid Charging Party a significantly lower salary because of her race."

2. "there is no reasonable cause to believe that Respondent limited Charging Party's increases because of her race or sex."

3. "there is reasonable cause to believe that the increased surveillance and subsequent discharge of Charging Party was in retaliation for her filing charges."

4. "there is no reasonable cause to believe that Respondent gave negative references in retaliation."

5. "there is reasonable cause to believe that Respondent failed to provide employment data, that by so doing it adversely affected Charging Party's employment situation and that said failure was in retaliation for her filing charges."

In its concluding paragraph the EEOC summarized its conclusion that there was reasonable cause to believe: "that the charge is true as regards to initial pay rate, discharge and employment verification."

The second charge was filed by Terry Benischek, a white female, on November 7, 1973. Ms. Benischek was employed by Linden on January 10, 1973 as a personnel coordinator and resigned from that position approximately ten months later, on November 9, 1973. The original charge alleged:

I believe that I have been discriminated against because of my sex (female) and because of my friendship with black employees in regard to *the terms and conditions of my employment* and *my rate of pay* and benefits. I also believe that I have been *constructively discharged* from (my) position as Personnel Administrator in that the conditions of employment were so unbearable due to the blatant racial discrimination and the refusal of the Company to follow their affirmative action program, THAT I was forced to resign. I also believe that the Company has tried to force me to leave my employment by harassment in *retaliation* for my attempts to enforce the Company's affirmative action program worked out with the EEOC. (Emphasis in original).

On December 9, 1975, the EEOC issued its determination in the Benischek case finding:

1. "based on the evidence which shows that Charging Party's position was not equivalent to the males cited nor were her qualifications equivalent to theirs, that the wage differential of males and females in the same position were based on qualifications, that similar positions in terms of skills had supervisory responsibilities and that the 'new position' is substantially different from the position held by Charging Party, the Commission finds that there is no reasonable cause to believe that sex was a factor in Charging Party's wage rate."

2. "the evidence shows that although as a whole Respondent met its stated goals, the circumvention of personnel functioned to deny minorities access to positions from which they have historically been excluded, namely sales and management and that

Charging Party was harassed in part because of her resistance to that process. Therefore, the Commission finds that, since Charging Party's resignation was a direct result of the harassment, and since the harassment was the direct result of her efforts toward equal opportunity, there is reasonable cause to believe that the resignation was a forceseeable consequence of the harassment and constituted a constructive discharge because of Charging Party's 'opposition to practices made unlawful by Title VII.'"

3. "based on the evidence the Commission finds no reasonable cause to believe that females were adversely affected by the terms and conditions as alleged by Charging Party." Thus, the Commission in the Benischek case found reasonable cause only with respect to the allegations of constructive discharge of Ms. Benischek.

On September 24, 1976, the EEOC issued to Ms. Benischek a "Conciliation Failure Notice of Right to Sue" with a copy going to Respondent. That notice stated in part:

The Commission has determined that it will not bring a civil action against the respondent(s) and accordingly is issuing you this Notice of Right to Sue. The issuance of this Notice terminates the Commission's processing of your charge, except that the Commission may seek status as intervenor if you decide to sue on your own behalf as described below.

The EEOC's files in the Benischek case which were produced for counsel for Defendants by counsel for the EEOC had stamped in large red letters on the file folders the word "CLOSED."

Linden, a Delaware corporation, was purchased by The Upjohn Company ("Upjohn") on July 1, 1968. On September 10, 1975, the corporate name of Linden was changed to "Laboratory Procedures South, Inc."

The first charge filed by Ms. Boney listed "Linden Laboratories, Inc." as the party responsible for the discrimination. ("Respondent"). The second charge filed by Ms. Boney listed the Respondent as "Linden Laboratories, Inc., a subsidiary of Upjohn Company" and the third charge filed by Ms.

Boney listed as Respondent "Linden Laboratories, Inc., a subsidiary of Upjohn Corp." The charge filed by Ms. Benischek listed as Respondent "Linden Laboratories, Inc., subsidiary of Upjohn Co." The determinations in both the Boney and Benischek cases listed the sole respondent as "Linden Laboratories, Inc. (a subsidiary of The Upjohn Co.)."

1. Presently before the court is defendant's motion to dismiss Upjohn as a party to this litigation. Essentially, it is contended that Upjohn was not the employer of the complaining parties, Upjohn was never named in the complaints filed with the EEOC as the party responsible for the discriminatory practices, and Upjohn was never subject to an EEOC investigation and conciliation.

■ There are at least two closely related bases upon which the responsibility of Upjohn for the actions of its subsidiary LPS may be premised. First, there may be evidence that the two corporations were so closely related in their activities and management as to constitute an integrated enterprise. The leading case in propounding the view is *Williams v. New Orleans Steamship Association,* 341 F.Supp. 613 (E.D.La. 1972). In *Williams,* the District of Louisiana embraced an EEOC opinion to the effect that establishments which are part of an integrated enterprise may be treated as a single employer. The *Williams* court does not stand alone in this view. *Taylor v. Armco Steel Corporation,* 373 F.Supp. 885 (S.C.Tex.1973); *United States v. Local 638, Enterprise Ass'n.,* 360 F.Supp. 979 (S.D.N.Y. 1973).

The most appropriate and definitive method for a determination as to whether a consolidation of separate entities is warranted involves a utilization of the National Labor Relations Board's "single employer" standards. *Baker v. Stuart Broadcasting Company,* 560 F.2d 389 (8th Cir. 1977). This quadripartite test entails proof of: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Radio Union v. Broadcast*

*Service of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). These standards are as appropriate for issues under Title VII as for problems under the Labor Management Relations Act, 1947, 29 U.S.C. §§ 141 et seq.

■ The second basis upon which to establish the responsibility of Upjohn for acts of its subsidiary LPS involves issues of agency. As provided by the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e(b)

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day . . . and any agent of such a person.

Title VII of the Civil Rights Act of 1964 outlaws discrimination by an "employer" on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Under these sections, if it may be shown that LPS operated as an agent of Upjohn, the liability for the discriminatory practices becomes the responsibility of Upjohn as "employer" and LPS as "agent".

The existence of the agency relationship may be inferred from the facts of the two parties' interaction. A denial of the agency relation does not forestall the right of a party claiming the existence of an agency to prove that fact in court. *Wood v. Holiday Inns, Inc.,* 508 F.2d 167 (5th Cir. 1975); *Crowe v. Hertz Corporation,* 382 F.2d 681 (5th Cir. 1967). An agency relationship has been implied to find joint employers for Title VII litigation purposes. *Equal Employment Opportunity Commission v. ISC Financial Corporation,* 14 EPD ¶ 7729 (W.D. Mo.1977); *Hairston v. McLean Trucking Company,* 62 F.R.D. 642 (M.D.N.C.1972). The Northern District of Georgia has invoked similar principles with respect to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. *Woodford v. Kinney Shoe Corporation,* 369 F.Supp. 911 (1973).

In fairness, it must be recognized that the federal courts have not been unanimous in their recognition of principal-agent liability in Title VII litigation. In *Hassell v. Harmon Foods, Inc.,* 336 F.Supp. 432 (W.D. Tenn.1971), aff'd., 454 F.2d 199 (6th Cir. 1972), the district court held that the parent-subsidiary relation was not a sham and would not be disregarded for Title VII purposes. *Hassell* was followed in *Lottice v. Ingersoll-Rand Co.,* 14 F.E.P. Cases 708 (N.D.Cal.1977) and *Equal Employment Opportunity Commission v. Cuzzens of Georgia, Inc.,* No. C77–623A (N.D.Ga. August 30, 1977). None of these cases dismiss the possibility that a parent corporation may be held liable for the acts of its subsidiary, however, and the procedural posture of this case prevents a determination that Upjohn is not a proper party.

■ The scope of the issues before the Court is not unrestricted, however. The potential liability of Upjohn is limited to the acts of discrimination alleged against LPS. Any discriminatory practices of Upjohn apart from LPS were not subject to EEOC conciliation procedures and would not be properly before the court. See, *Equal Employment Opportunity Commission v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976); *Equal Employment Opportunity Commission v. National Cash Register Company,* 405 F.Supp. 562 (N.D.Ga. 1975). Similarly, the judicial inquiry is limited to those allegations of complainants Boney and Benischek upon which the EEOC made a reasonable cause determination. An EEOC lawsuit brought before a defendant has a chance to voluntarily settle the issues is premature. *Equal Employment Opportunity Commission v. Hickey-Mitchell Company,* 507 F.2d 944 (8th Cir. 1974); *Equal Employment Opportunity Commission v. E. I. DuPont de Nemours and Co.,* 373 F.Supp. 1321 (D.Del.1974); *Equal Employment Opportunity Commission v. Westvaco Corp.,* 372 F.Supp. 985 (D.Md.1974). See also, 29 C.F.R. § 1601.22 (1976).

2. Presently before the court is defendants' motion to dismiss the allegations of the complaint arising out of the EEOC investigation and reasonable cause determination as to the charges filed by Terry Benischek. Defendants contend that the

EEOC made a final agency determination that it would not bring a civil action based on Ms. Benischek's charge. Defendants were notified that agency action on behalf of Ms. Benischek had been terminated and Ms. Benischek was issued a "Right to Sue" letter. The ninety days for individual action passed, yet no suit was filed.' A month and a half later, the EEOC filed suit based in part on Ms. Benischek's allegations. Defendants contend this court is without jurisdiction of those parts of the complaint premised upon the Benischek charge.

The seminal case on the termination of the EEOC's right to prosecute an action is *Occidental Life Insurance Co. v. Equal Employment Opportunity Commission,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In *Occidental,* Mr. Justice Stewart, writing for the court, noted that the Civil Rights Act of 1964, as amended, imposed but one time restriction on EEOC power to pursue judicial action: thirty days must transpire from the filing of a charge before the Commission seeks court enforcement of Title VII compliance. An examination of the legislative history of the 1972 amendments failed to demonstrate any Congressional intent to establish limits on the time frame within which the EEOC operates. Significantly, the Supreme Court refused to apply by implication a state statute of limitations in circumstances similar to those wherein they had been invoked many times before. See, to 432 U.S. at 367, 97 S.Ct. at 2455 (Rehnquist, J.) (dissenting opinion).

The broadly remedial purposes of Title VII have been further effectuated in *Equal Employment Opportunity Commission v. Huttig Sash & Door Co.,* 511 F.2d 453 (5th Cir. 1975). *Huttig Sash* permitted an EEOC action despite the fact that the complainant had been issued a "Right to Sue" letter and had undertaken individual prosecution of his claim. After the individual's action was dismissed with prejudice, the EEOC filed suit based on issues arising out of the EEOC investigation into the original charge. The Fifth Circuit reversed the trial court and permitted the EEOC action. The EEOC was barred only from pursuing claims arising in the individual's suit and then only because of res judicata.

■ The final and most persuasive authority for permitting the EEOC action lies in the regulations formulated by the Commission. These regulations provide for a prompt notification of the aggrieved person and the respondent as to whether the Commission finds reasonable cause that an unlawful employment practice has occurred. Further:

> The determination is final when issued; therefore, requests for reconsideration will not be granted. The Commission [the District Directors, or other designated officers] may, however, on its own motion, reconsider its determination *at any time* . . . . (Emphasis supplied). 29 C.F.R. § 1601.19b(b) and (d) (1976).

These regulations were issued under express statutory authority. Civil Rights Act of 1964, § 713(a), 42 U.S.C. § 2000e–12(a). Validly issued administrative regulations have the force and effect of law. *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Rodway v. United States Department of Agriculture,* 168 U.S.App.D.C. 387, 514 F.2d 809 (1975). These regulations are consistent with the spirit of the Supreme Court and Fifth Circuit decisions and the action must be permitted to proceed.

3. Defendants assert that the Georgia statute of limitations bars the award of back pay to either complainant. The EEOC asserts that this argument is foreclosed by *Occidental Life,* supra.

In *Equal Employment Opportunity Commission v. Griffin Wheel Company,* 511 F.2d 456 (5th Cir. 1975), the Fifth Circuit anticipated the Supreme Court's determination that the EEOC is not required to bring suit within 180 days from the filing of the charge. However, that ruling did not obviate the invocation of the applicable state statute of limitations to bar an individual's recovery of back pay.

In *Occidental Life,* the Supreme Court held "it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the im-

plementation of national policies." 432 U.S. at 366, 97 S.Ct. at 2455. The relevant national policies concern the elimination of discrimination in employment and not the unrestricted perpetuation of back pay claims.

Where the government is suing to enforce rights belonging to it, state statutes of limitation are not applicable. [citations omitted]. However, this principle is not apropos to the present back pay claims. Insofar as the pattern or practice suit constitutes a proper legal conduit for the recovery of sums due individual citizens rather than the treasury, it is a private and not a public action. *United States v. Georgia Power Company,* 474 F.2d 906, 923 (5th Cir. 1977).

The court held in *Georgia Power* that the applicable statute of limitations for the award of back pay was the two year period of Ga.Code Ann. § 3–704. Ms. Benischek quit the employ of Linden on November 6, 1973. Ms. Boney's employment was terminated by Linden on November 5, 1973. The alleged discriminatory acts occurred more than two years before the filing of this litigation, and the request for back pay is necessarily out of time. The possibility of a tolling of the statute has not been raised but may be considered on a proper motion.

4. The remaining motions are to be subject to further negotiation by the parties. If a resolution is not forthcoming, a hearing will be scheduled at the parties' request.

5. Accordingly, the motion to dismiss is GRANTED as to back pay claims and DENIED as to all other claims.