Betty Ann BONOMO

v.

NATIONAL DUCKPIN BOWLING CONGRESS, INC.

Civ. No. B–78–1338.

United States District Court,
D. Maryland.

March 23, 1979.

---

Mercedes C. Samborsky, Joppatowne, Md., for plaintiff.

Thomas B. Scott, Kensington, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, alleging discrimination in employment on the basis of sex. Plaintiff seeks compensatory damages in the amount of lost profits, as well as costs and attorney's fees. Defendant National Duckpin Bowling Congress (NDBC) moved to dismiss on the ground that the court lacks jurisdiction over the subject matter.[1] The legal issues are whether defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b), or, in the alternative, an "employment agency," as defined in § 2000e(c).

The defendant, a non-profit corporation, promulgates rules and regulations for duckpin bowlers, monitors duckpin tournaments and tours, qualifies tournament or tour directors for employment in the tournaments and tours, and generally regulates the conduct of participants in sanctioned duckpin bowling events. In order to participate in sanctioned amateur and professional tours and tournaments, all duckpin bowling alley proprietors, duckpin bowlers, tour and tournament sponsors and directors must be qualified members of the NDBC.

The tournaments and tours are organized and conducted by private businesses and charities, acting as sponsors. Tournament or tour directors, qualified by the NDBC, are directly responsible for the operation and supervision of sanctioned tournaments and tour events. No bowling establishment may conduct a sanctioned event unless a tournament director or executive of the NDBC is actively in charge of the event.

Plaintiff, a woman, applied to the NDBC in November of 1977 to become the Tour Director for the Maryland Professional Bowlers Association, a position left vacant by the NDBC's suspension of her husband, Anthony Bonomo. Acting on the recommendation of Robert Milburn, Vice President of NDBC, Executive Secretary Frank Micalizzi declined to appoint her as a Tour or Tournament Director.

Mrs. Bonomo then filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging discrimination on the basis of sex. On July 12, 1978, the EEOC issued a Notice of Right to Sue, and terminated any further processing of the charge. Plaintiff then commenced the action before this court on July 21, 1978.

In its motion to dismiss for lack of subject matter jurisdiction, the defendant takes the position that because it employs only five employees, Title VII of the Civil Rights Act of 1964 is inapplicable to it. Under 42 U.S.C. § 2000e(b) an employer who would be subject to the proscriptions of

---

1. Defendant also contends that the court lacks jurisdiction over the person, and that plaintiff has failed to state a claim upon which relief can be granted. In light of the court's disposition of the subject matter jurisdiction issue, the other questions need not be reached.

§ 2000e–2 is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." Defendant has submitted affidavits stating that its only employees are five persons who work in the Washington, D.C. headquarters office.

In response, plaintiff offers two separate but related theories: (1) that the integration of functions between the NDBC and the tournament sponsors makes them "joint employers;" and (2) that the same interrelation of duties and responsibilities renders the defendant a single "integrated enterprise" with each private tournament sponsor. On either of these grounds, plaintiff maintains, the number of employees counted for jurisdictional purposes is the sum of all employees of the NDBC and all the sponsors, a number far in excess of the required minimum of fifteen. In the alternative, plaintiff argues that the NDBC is an "employment agency," as defined in § 2000e(c), and thus the court's jurisdiction is properly invoked.

It is well-settled law that the burden to allege jurisdictional facts rests upon the plaintiff. If the defendant challenges these allegations in any appropriate manner, the plaintiff must support them by competent proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). It is also well-settled that the number of employees is a jurisdictional prerequisite under Title VII. *Burke v. Friedman*, 556 F.2d 867 (7th Cir. 1977). The court finds that neither of the aggregation theories offered by the plaintiff may be properly applied to the unconventional circumstances present here. Nor does defendant perform any of the functions customarily associated with an employment agency. Accordingly, defend-

ant's motion to dismiss for lack of jurisdiction over the subject matter will be granted.[2]

Under the joint employer theory, employers are considered to be joint employers of a charging party if each exercises control over his employment. Citing the various phases of a tournament director's employment for which the NDBC and tournament sponsor are each responsible, Ms. Bonomo alleges that, for the purpose of calculating the number of employees, the defendant is a joint employer of the tour directors with the private business organizations sponsoring the tournaments. Whether one employer possesses sufficient control over the work of employees of another to qualify as a joint employer is essentially a factual question. *Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964), *on remand*, 368 F.2d 778 (5th Cir. 1966). On the facts of that case, the Fifth Circuit agreed with the National Labor Relations Board that Greyhound, both by contractual agreement and actual practice, had reserved sufficient rights over certain employees of a janitorial service to be deemed a co-employer for the purpose of collective bargaining.

Yet plaintiff has directed the court to no case, nor has any been found, in which a federal court has recognized and applied the joint employer theory in the context of Title VII. It would strain credibility somewhat to hold that an employer with only a handful of employees on his payroll acquires, for the purposes of Title VII, the thousands of employees of other businesses with which it cooperates in some limited fashion.

Nor does this case present the proper facts upon which to extend this theory to the area of employment discrimination. In appointing a tour director, the NDBC does

---

2. The cases of *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973) and *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974), are thus not on point. In each of those cases, the defendant was found to be an employer within the meaning of Title VII, and the necessity of a

direct employer-employee relationship for the purpose of liability under the Act was dispensed with. Here, however, the court finds NDBC not to be an employer, and therefore need not address the issue of whether NDBC must directly employ plaintiff to be liable under Title VII.

no more than certify that the applicant has the necessary qualifications for the position. With regard to the sanctioned tour and tournament events, the only function of the NDBC is to allocate dates as available. The tour director is paid entirely by the tournament sponsor. He has sole responsibility for the actual running of the event in compliance with NDBC rules and regulations, and files information reports for each tournament with the NDBC.

The joint employer theory is only applied where it is shown that the defendant possesses "sufficient indicia of control" over the work of the purported employee. *Boire, supra,* 368 F.2d at 780. On the above facts, it is clear that the NDBC does not possess such control over the work of tour and tournament directors to qualify as a joint employer with the tournament sponsors. The power of the defendant to discipline its certified tour and tournament directors is hardly determinative, given that the NDBC holds similar authority with respect to all of its members for "conduct injurious to the best interests of the Congress." NDBC Constitution, Article VI, Section 8, paragraph 4. To hold that its disciplinary power over tour directors transforms the NDBC into their employer would seem to require a similarly untenable conclusion with respect to bowling alley proprietors, tournament sponsors, and even individual bowlers who participate in sanctioned leagues and events.

■■ In addition, plaintiff alleges that under a separate theory, the integrated enterprise theory, the NDBC and tournament sponsors may be aggregated for the purpose of calculating the number of employees. Some of the criteria applied by the EEOC in determining whether to combine separate business entities and treat them as a single employer for this purpose are interchange of employees, centralized control of labor relations and standards which have been used by the National Labor Relations Board. *Williams v. New Orleans Steamship Association,* 341 F.Supp. 613, 615 (E.D.La. 1972). Among the NLRB's considerations in its related employment actions have been the degree of interrelationship of operation between the business entities involved, the existence of common management, and the existence of common ownership or financial control. See *Sakrete of Northern California, Inc. v. NLRB,* 332 F.2d 902, 905 n. 4 (9th Cir. 1964).

The determination of whether two separate and distinct corporate entities may be regarded as a single employer under the integrated enterprise theory is thus a question of fact to be decided in light of the above factors. *EEOC v. Cuzzens of Georgia,* 15 FEP Cases 1807, 1808 (N.D.Ga.1977). In *Williams, supra,* the first case in which a federal court accepted the integrated enterprise theory in a Title VII context, the defendant was a trade association with 28 member companies. The association owned and operated a central hiring hall, from which all longshoremen were hired on a day-to-day basis to work for various member companies. It controlled employment on the waterfront, and established uniform employment policies and practices applicable to all member companies, deriving its broad authority by delegation from those companies.

In the present case, however, there exists neither such comprehensive interchange of employees nor wholly centralized control of labor relations. While an adequate supply of longshoremen is critical to the day-to-day operation of the steamship companies involved in *Williams,* sponsors of NDBC tour events are in need of a tournament director only on those few days when they plan and conduct their tournaments. The sponsor's isolated employment of a single NDBC tournament director for a purpose which may be unrelated to its ongoing business operation hardly rises to the level of centralized labor control found in *Williams.*

Similarly, there is no indication of common management, ownership or financial control between the NDBC and any of its tournament sponsors. The only operation in which they appear to engage jointly is the sanctioned tour event. On these facts, it appears as a matter of law that the NDBC and each of its tournament sponsors are not a single, integrated enterprise.

■ Given that neither of plaintiff's aggregation theories is applicable to the present case, there exists no basis upon which to find that the NDBC employs any more than the five employees who work in its Washington, D.C. headquarters office. Section 2000e(b) expressly limits Title VII coverage to employers which employ fifteen or more employees,[3] and the term "employer" is intended to have its common dictionary meaning. *Burke v. Friedman*, 556 F.2d 867, 870 (7th Cir. 1977). Accordingly, defendant is not an "employer" within the ambit of Title VII.

■ Plaintiff next alleges, in the alternative, that the NDBC is an "employment agency," and thus subject to the coverage of Title VII under § 2000e(c). That section defines the term as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer . . . ."

The court is satisfied that defendant's role in the accreditation and appointment of tour directors does not render it an "employment agency." Section 2000e(c) plainly requires that an employment agency "regularly" undertake to procure employees or employment opportunities, thus compelling the conclusion that "only those engaged to a significant degree in that kind of activity *as their profession or business*" are included. *Brush v. San Francisco Newspaper Printing Company*, 315 F.Supp. 577, 580 (N.D.Cal.1970), *aff'd*, 469 F.2d 89 (9th Cir. 1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1369, 35 L.Ed.2d 609 (1973) (emphasis in original). While certification or referral of tournament directors may be one of its ancillary functions, the business of the NDBC is the overall regulation and administration of its members engaging in the sport of duckpin bowling.

Plaintiff's reliance on the case of *Kaplowitz v. University of Chicago*, 387 F.Supp. 42 (N.D.Ill.1974) is misguided. While the district court found that the University's Law School was significantly involved in operating placement facilities, the court did not

hold, as plaintiff maintains, that the placement office was an employment agency. A subsequent case within the same circuit noted that the language in *Kaplowitz* relied upon by plaintiff is mere dicta. *Cannon v. University of Chicago*, 559 F.2d 1063, 1076 n. 24 (7th Cir. 1976), rev'd and remanded on other grounds, —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). On the whole, the broad construction afforded the term "employment agency" in *Kaplowitz* appears largely out of step with the prevailing view even within that circuit. *Id.*, citing *Brush, supra*; *Greenfield v. Field Enterprises, Inc.*, 4 EPD ¶ 7763 (N.D.Ill.1972). As the court stated in *Greenfield*, 4 EPD at p. 5932, the statutory definition

> clearly describes the activities of an employment agency in the traditional and generally accepted sense of that term, that is, any agency in the business of finding jobs for its worker clientele and finding workers for its employer clientele. Nothing in the statute or legislative history suggests a broader or different meaning.

Since the NDBC is neither an employment agency nor a joint employer or integrated enterprise with the various tournament sponsors, the motion of the defendant to dismiss for lack of jurisdiction over the subject matter must be granted.

For the foregoing reasons, it is this 23rd day of March, 1979, by the United States District Court for the District of Maryland,

ORDERED that the defendant's motion to dismiss for lack of jurisdiction over the subject matter is hereby GRANTED.

The Clerk shall mail copies of this Memorandum and Order to all parties.

---

**3.** Section 2000e(f) defines "employee" simply as "an individual employed by an employer."