695 F.2d 1038
 30 Fair Empl.Prac.Cas. 884,
30 Empl. Prac. Dec. P 33,262
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
LIBERTY TRUCKING COMPANY and Teamsters Local No. 695,
Defendants-Appellees.
 No. 82-1289.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1982.
Decided Dec. 20, 1982.
 
 Kenneth J. Burchfiel, Gen. Counsel, E.E.O.C., Washington, D.C., for plaintiff-appellant.
 Gerald C. Nichol, Lee, Johnson, Kilkelly & Nichol, Madison, Wis., for defendants-appellees.
 Before ESCHBACH, Circuit Judge, SWYGERT, Senior Circuit Judge, and CAMPBELL, Senior District Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 This appeal concerns the ability of the Equal Employment Opportunity Commission ("EEOC") to enforce conciliation agreements in the federal courts. The district court found that it lacked subject matter jurisdiction over EEOC's attempt to enforce a conciliation agreement. EEOC v. Liberty Trucking Co., 528 F.Supp. 610, 624 (W.D.Wis.1981). We reverse.
 
 
 2
 The underlying facts of this case illustrate the statutory background and the manner in which the EEOC handles many of the complaints annually filed with it. Delbert Carnahan filed a timely charge with the EEOC on December 15, 1972, after being fired from his job with the defendant Liberty Trucking Company ("Liberty"). Carnahan alleged that he had been discriminated against because he is a Seventh Day Adventist. The EEOC investigated the charge and on March 27, 1975 it issued its determination that there was reasonable cause to believe that Carnahan's rights had been violated. EEOC undertook informal conciliation as mandated by 42 U.S.C. Sec. 2000e-5(b) (1976).[1] A conciliation agreement was negotiated which was acceptable to the EEOC, pursuant to section 706(f)(1) of Title VII, 42 U.S.C. Sec. 2000e-5(f)(1) (1976), Liberty, and Carnahan.[2] These three parties signed the conciliation agreement during the spring of 1977.
 
 
 3
 The conciliation agreement provided for Carnahan's reinstatement, back wages and other compensation, his attorney's fees, and that Liberty would "make reasonable accommodations to the religious needs of its ... employees[,]" and would adjust Carnahan's work schedule to fit his religious beliefs. In other provisions, Liberty agreed not to discharge Carnahan without notifying the EEOC and to submit regular reports to the EEOC. Carnahan waived his right to sue with regard to the matters in the EEOC charges, subject to performance by Liberty of its promises. The conciliation agreement was to last for two years.
 
 
 4
 Liberty breached the agreement after six months. The EEOC's attempts to resolve the matter, beyond reinstatement of Carnahan, were unsuccessful. The EEOC then filed this action to enforce the terms of the conciliation agreement in November, 1977. Although the district court found that the defendant deliberately violated the conciliation agreement, the court dismissed the action for lack of subject matter jurisdiction. 528 F.Supp. at 624.
 
 
 5
 The question is whether a suit brought by the EEOC seeking enforcement of a conciliation agreement is one brought directly under Title VII of the Civil Rights Act of 1964 as amended.[3] 42 U.S.C. Secs. 2000 et seq. (1976). If so, the federal district courts have jurisdiction over the action, pursuant to section 706(f)(3) of Title VII, 42 U.S.C. Sec. 2000e-5(f)(3) (1976).[4]
 
 
 6
 Although Title VII does not explicitly provide the EEOC with the authority to seek enforcement of conciliation agreements in the federal courts, we conclude that Congress intended to provide the EEOC with a federal forum to enforce conciliation agreements.[5] The federal courts have consistently interpreted Title VII in a manner which places great weight on the important remedial purposes of the legislation, recognizing that a hyper-technical construction of Title VII is inappropriate. See, e.g., Zipes v. TransWorld Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). In Flowers v. Local No. 6, Laborers International Union of North America, 431 F.2d 205, 207 (7th Cir.1970), we observed that "... Title VII was not enacted as originally proposed and debated but was quilted with amendments. Not surprisingly, therefore, Title VII contains gaps...." Although this observation applied to the legislation prior to the 1972 amendments, its accuracy is undoubtedly more correct now.
 
 
 7
 Congress is not required to fill in every detail so long as it has provided enough federal law "from which appropriate remedies may be fashioned even though they rest on inferences. Otherwise we impute to Congress a futility inconsistent with the great design of this legislation." United States v. Republic Steel Corp., 362 U.S. 482, 492, 80 S.Ct. 884, 890, 4 L.Ed.2d 903 (1960). Cf., Wells v. International Great Lakes Shipping Co., 693 F.2d 663 at 665 (7th Cir.1982) ("The absence of such machinery [to enforce substantive rights in a federal statute] would be a curious oversight which we hesitate to impute to the draftsman.").
 
 
 8
 We first turn to the legislative history of the 1972 amendments to Title VII to determine Congress' intent with respect to the enforceability of conciliation agreements in the federal courts. See Zipes, supra, 102 S.Ct. at 1132-33. The relevant portions of Congressional consideration of this matter concerns the nature of the EEOC's enforcement powers. The Senate and the House of Representatives originally acted upon substantially similar bills. S. 2515, S.Rep. No. 415, 92d Cong., 1st Sess. 38 (1971); H. 1746, H.Rep. No. 238, 92d Cong., 2d Sess. 17 (1972), reprinted in 1 Legislative History of the Equal Employment Opportunity Act of 1972 (1972) U.S.Code Cong. & Admin.News 1972, p. 2137 ("1 Leg.His.") at 157, 410, 32, 61, respectively. Both bills proposed a quasi-judicial administrative model which granted the EEOC authority to issue judicially enforceable cease and desist orders. S.Rep. No. 415, supra, at 1, 1 Leg.His. 410; H.R.Rep. No. 238, supra, at 1, 1 Leg.His. 61. Review of such orders could be sought in the United States courts of appeals. S. 2515, supra, Sec. 706(1), 1 Leg.His. 168; H.R. 1746, supra, Sec. 706(k), 1 Leg.His. 40. In addition, both bills provided that the EEOC could seek temporary or preliminary relief in the federal district court. S. 2515, supra, Sec. 706(p), 1 Leg.His. 171; H.R. 1746, supra, Sec. 706(o ), 1 Leg.His. 43. Importantly, both bills explicitly provided that conciliation agreements entered into by the EEOC and the employer were enforceable by the Commission in the federal courts of appeals. S. 2515, supra, Sec. 706(i), 1 Leg.His. 165; H.R. 1746, supra, Sec. 706(i), 1 Leg.His. 39.
 
 
 9
 The substitute bill, H.R. 9247, 92d Cong. 1st Sess. (1971), 1 Leg.His. 141, which in part became the current law altered the EEOC enforcement scheme by empowering the EEOC to seek enforcement of Title VII in the federal district courts. H.R. 9247, supra, Sec. e, 1 Leg.His. 144-45. In place of the complex jurisdiction provisions of the original proposals, detailed above, the entire provision for federal court jurisdiction was simply subsumed in section 706(f)(3), 42 U.S.C. Sec. 2000e-5(f)(3), which contains the ambiguous phrase "actions brought under this title." Section 706(f)(3) of the 1972 amendments is identical to the jurisdictional provision adopted in the original 1964 act. See Pub.L. 88-352, 78 Stat. 241, Sec. 706(f), July 2, 1964.
 
 
 10
 The sole concern of the substantive bill was whether if conciliation could not be reached, the EEOC was to seek enforcement of Title VII in the federal courts or in administrative proceedings. 117 Cong.Rec. 31958-84, 32088-110, 1 Leg.His. 191-250. There is no question that reaching conciliation agreements was to remain the preeminent focus of EEOC activity. See Conference Report to Accompany H.R. 1746, Joint Explanatory Statement of Managers at the Conference on H.R.1746 to Further Promote Equal Employment Opportunities for American Workers, S.Rep. No. 681 and H.R.Rep. No. 899, 92d Cong., 2d Sess. 17 (1972); 2 Leg.His. 1837. Nothing in the debates or reports indicates that the substitute bill was meant to change the original proposal which explicitly provided for federal court jurisdiction over EEOC actions to enforce conciliation agreements.
 
 
 11
 Because this legislative history is ambiguous, we next assess the role of conciliation agreements in the statutory scheme Congress adopted in the 1972 amendments. Conciliation agreements are voluntary contracts containing terms upon which the employer, the employee, and the EEOC agree. Nothing in the legislation compels either of these parties to reach final agreement. See Flowers, supra, 431 F.2d at 207; Cox v. U.S. Gypsum Co., 409 F.2d 289, 291 (7th Cir.1969); Gerstle v. Continental Airlines, Inc., 358 F.Supp. 545 (D.Colo.1973); Williams v. New Orleans Steamship Ass'n, 341 F.Supp. 613, 617 (E.D.La.1972). An employer who believes he has not discriminated or that the terms proposed either by the EEOC or the employee are unfair is free to refuse to agree. (Indeed, every proper direct enforcement action brought by the EEOC reflects the failure of the parties to agree to terms of conciliation.)
 
 
 12
 Many conciliation agreements are similar to the one here. They often contain elaborate prospective remedial requirements including reinstatement and promises to employ. See, e.g., 8 BNA Fair Employment Practices Manual 431:53 (reproduction of conciliation agreement effective June 15, 1978, between EEOC and General Electric Company). Conciliation agreements often contain complex and statutorily based promises such as those here, e.g., "to make reasonable accommodations to the religious needs of its ... employees where such accommodation can be made without undue hardship on the conduct of [its] business, so long as required by Title VII of the Civil Rights Act of 1964." Moreover, as in the present case, in return for the employers' promises, both the EEOC and the employees waive their rights to sue with respect to the matters alleged in the EEOC charge. See Gerstle, supra, 358 F.Supp. at 548-49; Williams, supra, 341 F.Supp. at 617.
 
 
 13
 The legislative history of the 1972 amendments indicates Congress' commitment to the legal force of conciliation agreements. Senator Javits introduced the amendment substituting the present language of section 706(f)(1), 42 U.S.C. Sec. 2000e-5(f)(1) (1976), which calls for a "conciliation agreement" in place of the language of the 1964 Act referring to attempts to "obtain voluntary compliance," Pub.L. 88-352, 78 Stat. 260 (July 2, 1964), Sec. 706(e), with the following explanation:
 
 
 14
 One problem is that the words "voluntary compliance" are not words of art such as are used in this field. The words I have used in the amendment are "conciliation agreement." These are words of art, and they also are executive words, in the sense that an agreement has to be entered into, signed, sealed, and delivered; whereas, "voluntary compliance" is a kind of amorphous proposition which may consist of a combination of acts, letters, telephone calls, and so forth. So, in the first place, the amendment is desirable in terms of precision.
 
 
 15
 118 Cong.Rec. 1068 (1972). The substitute language prevailed in the Senate, 118 Cong.Rec. 3979 (1972), and was adopted by the Conference Committee. Conference Report to Accompany H.R. 1746, supra, at 17.
 
 
 16
 Resolution of complaints of employment discrimination through conciliation agreements and avoiding resort to litigation has consistently been the primary means through which the EEOC vindicates rights secured by Title VII. When the EEOC was initially established in 1964, Congress gave it only the power to investigate complaints and negotiate voluntary compliance. Pub.L. 88-352, supra, Sec. 706(f). It was not until Congress amended Title VII in 1972 that the EEOC was given the authority to seek federal court enforcement of Title VII. Compare Pub.L. 88-352, supra, Sec. 706(e) with Pub.L. 92-261, March 24, 1972, 86 Stat. 104, Sec. 706(e), 42 U.S.C. Sec. 2000e-5(f)(1) (1976). As the Supreme Court has observed:
 
 
 17
 Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.
 
 
 18
 Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). Even after the 1972 amendments, conciliation remains the most important function of the EEOC. EEOC v. Raymond Metal Products Co., 530 F.2d 590, 596 (4th Cir.1976).
 
 
 19
 Conciliation is so important to the statutory scheme that the EEOC may not commence legal action until it has attempted to negotiate voluntary compliance. 42 U.S.C. Sec. 2000e-5(f)(1); EEOC v. Klingler Electric Corp., 636 F.2d 104, 107 (5th Cir.1981); EEOC v. Pet, Inc., 612 F.2d 1001, 1002 (5th Cir.1980); EEOC v. Zia Co., 582 F.2d 527, 532-33 (10th Cir.1978); EEOC v. Guaranty Savings & Loan Ass'n, 561 F.2d 1135, 1137 (5th Cir.1977); Patterson v. American Tobacco Co., 535 F.2d 257, 271-72 (4th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976); EEOC v. Raymond Metal Products Co., 530 F.2d 590, 596 (4th Cir.1976); EEOC v. Sherwood Medical Industries, 452 F.Supp. 678, 683-84 (M.D.Fla.1978); EEOC v. Wilson & Co., 452 F.Supp. 202, 203-05 (W.D.Okla.1978); EEOC v. Greyhound Lines, Inc., 411 F.Supp. 97, 102 (W.D.Pa.1976); EEOC v. Sears Roebuck, Co., 650 F.2d 14, 18-19 (2d Cir.1981); EEOC v. Atlanta Big Boy Management, Inc., 17 F.E.P. 344, 345-46 (N.D.Ga.1978).
 
 
 20
 This statutory scheme will be undermined by a holding that the federal courts lack jurisdiction over suits seeking enforcement of conciliation agreements. State court enforcement of conciliation agreements is problematical. Provisions which uniformly appear in EEOC conciliation agreements would be subject to the variance and uncertainty of fifty different state court interpretations.[6] Insuring the uniform construction and application of thousands of yearly conciliation agreement contracts entered into by this federal agency and designed to protect federally created statutory rights, therefore, will fall to the Supreme Court. Cf. Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209-10 (5th Cir.1981) (federal, not state law, determines the validity of an aspect of a settlement agreement in a Title VII case). Additional problems may arise from the fact that many state courts are hostile to specific performance clauses in employment contracts. See 81 C.J.S. Specific Performance Sec. 96 (1977) (Supp.1982) and cases cited therein.
 
 
 21
 If conciliation agreements are not brought directly under Title VII, the provisions which ensure adequate legal representation of employees who may have suffered employment discrimination will be useless. The EEOC might not be considered a party to the conciliation agreement, and, thus, the EEOC could not bring an action on behalf of itself or the aggrieved employee in state court. The employer here asserts this would be true in Wisconsin. Moreover an employee enforcement action would not have the benefit of the appointment of counsel and attorney's fee provisions of Title VII. See 42 U.S.C. Secs. 2000e-5(f)(1), 2000e-5(k) (1976).
 
 
 22
 Because state court enforcement is so problematical, the ultimate result of the district court's holding would be a downgrading of the importance of conciliation agreements, and a concomitant increase in direct enforcement actions filed in the federal court. Conciliation agreements, contrary to Congressional intent, would become the exception and not the rule. The uncertainty and varying enforcement of conciliation agreements in the state courts will make conciliation agreements a much less attractive resolution of employment discrimination grievances to the EEOC, aggrieved employees and employers. All three concerned parties will, instead, prefer direct enforcement in the federal courts. In these direct enforcement actions, consent decrees, virtually identical to conciliation agreements, would provide direct federal court enforcement through contempt proceedings. See Carson v. American Brands, Inc., 450 U.S. 79, 81, 101 S.Ct. 993, 994, 67 L.Ed.2d 59 (1981) (refusal of court to enter a consent decree is immediately appealable). See also Airlines Stewards and Stewardesses v. American Airlines, Inc., 455 F.2d 101, 103, 109 (7th Cir.1972) (settlement reached prior to trial on the merits, even though objected to by the EEOC, was acceptable because it reflected voluntary agreement and voluntary agreement is especially important to Title VII). The parties can and will achieve almost exactly the same result that they would achieve through federal court jurisdiction over suits to enforce conciliation agreements.
 
 
 23
 The result, of course, is not identical to the extent that the federal courts under certain circumstances must approve the terms of settlement or consent decrees while the courts obviously do not approve the terms of conciliation agreements. See generally United States v. Allegheny-Ludlum Industries, Inc., 517 F.2d 826, 846-51 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976) (extensive discussion of federal courts' role in approving Title VII consent decrees). See also Fed.R.Civ.P. 23(e); Carson, supra. It is this distinction which apparently troubled the district court below. 528 F.Supp. at 619. But the district court, we believe, failed to recognize the implication of the fact that conciliation agreements are entirely voluntary. It is precisely this voluntary character of conciliation agreements which prevents EEOC from attaining the adjudicative power which Congress rejected with the 1972 amendments.[7]
 
 
 24
 In light of Congress' commitment to conciliation as the centerpiece of its attempt to eradicate employment discrimination, potential problems in the legal consequences of particular terms of conciliation agreements are better addressed through rules concerning the construction and effect of conciliation agreements, rather than by simply refusing jurisdiction altogether. Otherwise, we inadvertently undermine Congress' commitment to conciliation. We conclude, therefore, that an EEOC action to enforce a conciliation agreement is an action brought directly under Title VII, and the federal district courts have jurisdiction over such actions.
 
 
 25
 The decision of the district court is hereby reversed and this case is remanded for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 2000e-5(b) provides in relevant part:
 Whenever a charge is filed by ... a person claiming to be aggrieved ... alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall ... make an investigation thereof.... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.
 
 
 [2]
 42 U.S.C. Sec. 2000e-5(f)(1) provides in relevant part:
 If within thirty days after a charge is filed with the Commission, ..., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent....
 (emphasis added.)
 
 
 [3]
 The EEOC advances two other bases for federal court jurisdiction. First, because the EEOC is an agency of the federal government expressly authorized to sue, jurisdiction in the federal courts is provided by 28 U.S.C. Sec. 1345 (1976). Second, because the matter in controversy arises under a law of the United States, federal jurisdiction of suits to enforce conciliation agreements is provided by 28 U.S.C. Sec. 1331 (1976). We find it unnecessary to decide the applicability of either of these alternative bases of federal jurisdiction
 
 
 [4]
 Section 706(f)(3) provides in relevant part: "Each United States district court ... shall have jurisdiction of actions brought under this title."
 
 
 [5]
 This conclusion is in accord with that of several other federal courts: Brito v. Zia Co., 478 F.2d 1200, 1204 (10th Cir.1973); EEOC v. Mississippi Baptist Hospital, 12 F.E.P. Cases 411 (S.D.Miss.1976); EEOC v. St. Louis Labor Health Institute, 17 F.E.P. Cases 250, 251 (E.D.Mo.1978); EEOC v. Contour Chair Lounge Co., 457 F.Supp. 393, 394-95 (E.D.Mo.1978), aff'd in part, rev'd in part on other grounds, remanded with directions, 596 F.2d 809 (8th Cir.1979); Jersey Central Power & Light Co. v. Local Union 327, I.B.E.W., 508 F.2d 687, 698-99 (3d Cir.1975), cert. denied, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976). The district court opinion, supra, 528 F.Supp. at 622-24, fully describes the facts in these cases. As the district court noted, the reasoning of these cases on the question of jurisdiction of the federal courts over actions to enforce conciliation agreements is not comprehensive. See also EEOC v. Pierce Packing Co., 669 F.2d 605 (10th Cir.1982), discussed at footnote 7, infra
 
 
 [6]
 If a suit seeking enforcement of conciliation agreements is not one brought under Title VII, then, absent jurisdictional bases in 28 U.S.C. Secs. 1331, 1345, see footnote 3 supra, federal district courts' interpretation of conciliation agreements will be extremely rare
 
 
 [7]
 We do not reach the question whether a distinction should be made between conciliation agreements, which are statutory creatures and which follow an EEOC investigation and determination of reasonable cause, and settlement agreements which are a device created by the EEOC to resolve complaints prior to investigation. See, EEOC v. Pierce Packing Co., 669 F.2d 605 (9th Cir.1982). We note, however, that our decision here turns on the voluntary nature of conciliation agreements and not upon an administrative finding of reasonable cause. Jurisdiction predicated upon the administrative finding of reasonable cause would, it appears, tend to convert the EEOC into an adjudicative administrative agency