EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,

v.

SAFEWAY STORES, INCORPORATED and Teamsters Local 745, Defendants-Appellants.

No. 82–1266.

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1983.

Rehearing and Rehearing En Banc Denied Oct. 31, 1983.

Hicks, Gillespie, James & Agee, James C. Wilson, Dallas, Tex., for Local 745.

Clark, West, Keller, Butler & Ellis, Allen Butler, Richard Leland Brooks, Dallas, Tex., for Safeway Stores, Inc.

Barbara Lipsky, E.E.O.C., Washington, D.C., for E.E.O.C.

Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This action was brought by the Equal Employment Opportunity Commission (EEOC) seeking specific performance of three conciliation agreements entered into between defendant Safeway Stores, Inc. and the EEOC to resolve four charges of employment discrimination filed against Safeway.[1] Willis Taylor filed a charge of discrimination on April 10, 1972, alleging that Safeway's failure to transfer him or promote him to a truck driver position was because of his race. Fernando Cantu and Concepcion Rodriguez filed charges on January 10, 1974, alleging that Safeway refused to hire them for positions in its warehouse due to their national origin. Billy Faison filed his charge of discrimination on August 9, 1975, alleging that Safeway failed to hire him as a truck driver on account of his race.

Following investigation on all four charges, the EEOC found reasonable cause to believe that the allegations were true. Pursuant to Section 706(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b), the EEOC then attempted conciliation with Safeway with respect to the charges. In June and August of 1976, a conciliation agreement was reached, signed by the EEOC, Safeway, and the charging parties. While there were technically three agreements, we treat them as one overall agreement.[2] According to the conciliation agreement, Safeway promised to give each employee a seniority date retroactive either to the date he applied for employment or to the first date that someone was hired by Safeway following his application. Safeway also agreed to pay each employee a specific sum which represented the amount

---

1. The EEOC is the federal agency charged with enforcement of the antidiscrimination provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and it often proceeds on the basis of complaints filed by individuals who claim to have been the victims of prohibited discrimination on the basis of race, religion, sex or national origin. 42 U.S.C. § 2000e–2(a).

2. The charges of Rodriguez and Cantu were resolved by a single conciliation agreement. There are, therefore, only three conciliation agreements involved in this action.

he would have earned had he been hired on the earlier date. In exchange for these provisions each charging party and the EEOC agreed not to sue Safeway on the underlying charge, subject to the performance by Safeway of the promises in the agreement. The conciliation agreement also included a provision stating that it did not constitute an admission by Safeway that a violation of Title VII had taken place. The conciliation agreement did not have any specific duration.

At all times relevant to this action, Teamsters Local 745 (the Union) was the collective bargaining representative for Safeway employees in the truck driver and warehouseman job classifications related to the claims made by Taylor, Faison, Rodriguez and Cantu. The Union was not a party to the conciliation agreement, despite a request by the EEOC that it participate in the conciliation process. The Union refused to sign the agreement, and consistently opposed the award of retroactive seniority to the charging parties.

On September 9, several months after signing the conciliation agreement, Safeway reneged on its initial instructions to revise the seniority rosters in accordance with the conciliation agreement and reassigned a later date to each employee, corresponding to the date each was hired or promoted.[3] Following Safeway's refusal to enforce the retroactive seniority dates provided in the conciliation agreement, the charging parties again complained to the EEOC. Subsequently, the EEOC and Safeway entered into an addendum to the conciliation agreement regarding Faison, Rodriguez and Cantu.[4] The addendum stated that each charging party would retain his preconciliation seniority date, and in exchange, that Safeway would protect him from economic loss in the event he was laid off due to the use of the less advantageous

seniority date. The term of the addendum agreement was two years.

Safeway performed its obligations under the addendum during the two years of its existence, but refused to give the charging parties their retroactive seniority when the addendum expired. On February 1, 1978, the EEOC filed suit against Safeway, alleging that Safeway had breachd the conciliation agreement by failing to assign the employees the seniority dates provided for in the agreement. The EEOC's complaint asked that the conciliation agreement be specifically enforced and that Safeway and the Union be enjoined from refusing to comply with its terms.[5]

Testimony at trial indicated that Safeway did not carry out the conciliation agreement because of threats received from employees and union members. The company's employment relations manager testified that the charging parties had reported verbal abuse, and he also testified that there had been reports of several incidents of harassment by co-workers and union members, including the slashing of car tires. The manager also stated that several drivers in the trucking department had threatened not to bid on runs if the charging parties receive retroactive seniority.

EEOC officials who participated in negotiating the agreement testified that the purpose of the addendum had been to give Safeway additional time to resolve its problems with the employees and the Union, while simultaneously protecting the charging parties from economic harm. Safeway and the Union contended that Safeway's performance under the two-year addendum agreement fulfilled its obligations to the three employees. In April 1982, the district court issued its judgment in favor of the EEOC, specifically enforcing the conciliation agreement and awarding backpay to the EEOC on behalf of Taylor, Faison, Ro-

---

3. See infra note 20.

4. Safeway and the EEOC did not agree upon a similar addendum to the Taylor conciliation agreement.

5. Teamsters Local 745 was joined as a defendant pursuant to Fed.R.Civ.P. 19(a)(2) which authorized the EEOC to join the union because the union "claims an interest relating to the subject of the action."

driguez and Cantu.[6] No judgment was granted with respect to the Teamsters. Safeway and the Teamsters appeal.

## I. SAFEWAY'S CLAIMS

### A. *Jurisdiction*

■ A preliminary consideration is whether the district court, 560 F.Supp. 77, was correct in concluding that it had jurisdiction over this action. The court held that its jurisdiction was established by Section 706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f)(3), which provides in part that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter."[7]

Safeway contends that subject matter jurisdiction over the suit exists only in state court. This argument is based on its assertion that Title VII neither expressly authorizes the EEOC to sue on a contract, nor impliedly authorizes the action under § 2000e–5(f)(1) which provides for a civil action by the EEOC if the agency is "unable to secure from the respondent a conciliation agreement acceptable to the Commission." Additionally, because Title VII does not compel employers to reach conciliation agreements, Safeway argues that subject matter jurisdiction does not flow indirectly from Title VII through 28 U.S.C. §§ 1331(a) or 1337.

We note initially that no federal court has refused jurisdiction over actions to enforce or interpret Title VII conciliation agreements.[8] Several courts have presumed that federal jurisdiction is available without expressly considering the issue.

*See Brito v. Zia Co.,* 478 F.2d 1200 (10th Cir.1973) (nominal damages awarded individual plaintiff for breach of conciliation agreement without discussion of jurisdictional issue); *Southbridge Plastics Division, W.R. Grace & Co. v. Local 759, International Union of United Rubber, Cork, Linoleum and Plastic Workers of America,* 565 F.2d 913 (5th Cir.1978) (jurisdiction to consider the effects of conciliation agreements upon collective bargaining agreement assumed); *EEOC v. St. Louis Labor Health Institute,* 17 FEP Cases 250 (E.D.Mo.1978) (jurisdiction to enforce conciliation agreement assumed without discussion). Several other courts have found jurisdiction, albeit without extensive discussion of the issue. *See EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809 (8th Cir.1979) (jurisdiction to enforce the conciliation agreement imposing a quota provision assumed under 42 U.S.C. §§ 2000e et seq.). *EEOC v. Mississippi Baptist Hospital,* 12 FEP Cases 411 (S.D. Miss.1976) (jurisdiction to enforce conciliation agreements available under § 2000e–5(f)(3), 28 U.S.C. §§ 1337 and 1343(4) because conciliation agreement would otherwise be rendered meaningless); *Jersey Central Power & Light Co. v. Local Unions 327, 749, 1289, 1298, 1303, 1309 and 1314 of International Brotherhood of Electrical Workers,* 508 F.2d 687 (3d Cir.1975), *vacated and remanded on other grounds,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976) (federal jurisdiction to consider effect of conciliation agreement upon collective bargaining exists under 28 U.S.C. § 1331).

While the reasoning of these cases underlying the acceptance of federal jurisdiction is admittedly less than comprehensive, we are convinced that federal courts have jurisdiction over suits to enforce Title VII con-

---

**6.** Taylor was awarded $1750, Faison $15,000, Cantu $2500, and Rodriguez $4400.

**7.** The court also found that jurisdiction would be proper under 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce), 28 U.S.C. § 1343(4) (actions to recover damages or secure equitable relief under Acts of Congress providing for the protection of civil rights), and 28 U.S.C. § 1345 (civil actions commenced by an agency of the United States).

**8.** The district court in *Equal Employment Opportunity Commission v. Liberty Trucking Co.,* 528 F.Supp. 610 (W.D.Wis.1981) dismissed a case seeking enforcement of a conciliation agreement for lack of subject matter jurisdiction. This holding, however, was reversed by the Seventh Circuit. *See infra* p. 572.

ciliation agreements. Although Title VII does not explicitly provide the EEOC with the authority to seek enforcement of conciliation agreements in federal court, it would be antithetical to Congress' strong commitment to the conciliatory process if there were no federal forum in which the EEOC could enforce such agreements. "Cooperation and voluntary compliance were selected [by Congress] as the preferred means" of accomplishing its goal of eliminating employment discrimination. *United States v. City of Miami,* 664 F.2d 435, 442 (5th Cir. 1981) (en banc) (*quoting Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974)). To this end, Congress created the EEOC and established an administrative structure whereby the agency "would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit." *Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 44, 94 S.Ct. at 1017. Indeed, the EEOC is expressly prohibited from commencing legal action until it has attempted to negotiate voluntary compliance. 42 U.S.C. § 2000e–5(f)(1); *EEOC v. Klingler Electric Corp.,* 636 F.2d 104, 107 (5th Cir. 1981); *EEOC v. Pet, Inc.,* 612 F.2d 1001, 1002 (5th Cir.1980). In view of this federal policy requiring employment discrimination claims to be investigated by the EEOC and, whenever possible, administratively resolved, it would be at war with the statutory scheme to conclude that Congress did not intend to permit enforcement of these voluntary agreements in federal courts.

The one court to undertake a detailed analysis of the federal jurisdiction question agrees with our conclusion. In *EEOC v. Liberty Trucking Co.,* 695 F.2d 1038 (7th Cir.1982), a conciliation agreement was negotiated between the EEOC and the defendant employee following charges by the employee that he had been fired from his job because he was a Seventh Day Adventist. Liberty Trucking breached the conciliation agreement after six months, and further attempts by the EEOC to resolve the matter were unsuccessful. The EEOC then filed an action in district court seeking enforcement of the agreement. The district court found that the employer deliberately violated the conciliation agreement, but it dismissed the action for lack of subject matter jurisdiction. *See EEOC v. Liberty Trucking Co.,* 528 F.Supp. 610 (W.D.Wis. 1981). The court adopted the identical argument advanced by Safeway in the immediate case. It ruled that an EEOC action to enforce the conciliation agreement is an action on a contract, that Title VII does not expressly or by implication authorize the EEOC to sue on a contract, and therefore only the general law of contracts can serve as the source of the agency's authorization to sue. It concluded that suit must be brought in state court. *Id.* at 614.

On appeal, the Seventh Circuit reversed, holding that a suit brought by the EEOC seeking enforcement of a conciliation agreement is one brought directly under Title VII and thus the federal courts have jurisdiction pursuant to § 2000e–5(f)(3).[9] The Seventh Circuit's decision, as is ours, was predicated upon the primacy of conciliation to the Title VII statutory scheme. As the court explained, "[r]esolution of complaints of employment discrimination through conciliation agreements and avoiding resort to litigation has consistently been the primary means through which the EEOC vindicates rights secured by Title VII." 695 F.2d at 1042. The court went on to conclude that state court enforcement would be both "problematic" and "uncertain", so that the ultimate result of denying federal jurisdiction would be to make conciliation a much less attractive means by which to resolve employment discrimination grievances.[10]

**9.** The court declined to decide whether jurisdiction would have been proper under either 28 U.S.C. §§ 1345 or 1331.

**10.** The Seventh Circuit stressed the difficulties which would result from enforcement of conciliation agreements in state court. Because suits to enforce these agreements inevitably involve interpretation of Title VII, the court evaluating them must determine basic questions of whether and under what conditions such agreements are possible. The court reasoned that it was therefore critical that construction and applica-

We are not prepared to agree with the Seventh Circuit that state court enforcement of conciliation agreements would necessarily create difficulties or that state courts might be hostile to such agreements. State courts have proved their ability to enforce federal statutes; for example, in suits brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. We do agree, however, that it would be illogical to conclude that Congress intended exclusive state jurisdiction, that there be *no* federal jurisdiction to consider or enforce the voluntary agreements it designated as the primary means of accomplishing its goal of eliminating employment discrimination. We hold, therefore, that federal jurisdiction to enforce conciliation agreements exists directly under Title VII by means of 42 U.S.C. § 2000e–5(f)(3).[11] We agree with the court below that the usefulness of conciliation agreements as vehicles for voluntary resolution of employment discrimination charges would be "significantly reduced" if the agreements were not enforceable in the forum which is most familiar with Title VII litigation.

## B. *Enforcement of the Conciliation Agreement*

■ 1. Safeway asserts that even if jurisdiction is proper, Title VII does not empower the EEOC to enforce conciliation agreements in federal court. Rather, the EEOC is empowered only to litigation allegations of "unlawful employment practices" as defined by Title VII in § 2000e–5(g). Because nowhere in the statute is there language making breach of conciliation agreements an "unlawful employment practice" which would warrant instigation of litigation by the EEOC, Safeway contends

that the EEOC's only recourse for an employer's breach of such an agreement is to sue to establish the underlying charge of discrimination. In essence, therefore, Safeway is asking this court to hold that the promises made to the EEOC in a conciliation agreement are without legal effect and can be violated with impunity.

As explained in the preceding section, conciliation is central to the statutory scheme of Title VII. If conciliation agreements were unenforceable, there is little question that this primary role of voluntary compliance would be undermined. Were we to accept Safeway's position, an employer would be free to enter into a conciliation agreement, bide its time for so long as it benefited from doing so, and then breach the agreement with no fear of sanction. The employer would have lost nothing. It would then face only the same prospect of suit on the underlying discrimination charge it would have faced prior to its entering the conciliation agreement. The EEOC and the aggrieved employees, on the other hand, would have suffered serious prejudice. The suit would be possible only after the Commission learned an employer or a union would not fulfill its obligations. Suit undertaking to prove discrimination would have been substantially delayed. Such delay would potentially result in difficulty in proving violations of the Act. Witnesses might no longer be available, memories would have faded, and crucial documents might not have been preserved. Conciliation, instead of being a means of enforcing the law, could well become a dilatory tactic which could be used to make enforcement of Title VII less effective.[12]

tion of these agreements, entered into by a federal agency and designed to protect federally created statutory rights, be according to uniform standards and not subject "to the variance and uncertainty of 50 different state court interpretations." Additionally, the court concluded that if state courts were the initial forum in these cases, the duty of insuring uniform construction in application of thousands of yearly conciliation agreement contracts would fall to the Supreme Court, and that state courts may well be hostile to specific performance clauses in employment contracts.

11. Because we hold that jurisdiction exists under this section, we find it unnecessary to decide the applicability of the alternative bases for federal court jurisdiction advanced by the EEOC and considered by the district court, see n. 7, *supra*.

12. This case provides a good example of the delay which could be produced by a recalcitrant employer (or union) if there were no way to enforce the conciliation agreements. Here the EEOC found cause on the charges in late 1975 and early 1976. When Safeway claimed

Were we to rule that the federal courts were unable to enforce these agreements, we would undermine the very foundation upon which the conciliation process, the "most important function of the EEOC," rests. If agreements between an employer or union and the Commission voluntary to comply with measures to eliminate discrimination in employment could be abrogated with impunity, there would be no rational reason for the EEOC to enter into such agreements. The Commission would have no guarantee that its bargained-for concessions would result in *solutions* to the alleged discriminatory practices. Rather, the EEOC would be in a position where it was compelled, by statute, to engage in the process of "conference, conciliation and persuasion" where that process would likely delay resolution of its claim and actually prejudice the aggrieved employees the agency represents.

In conclusion, therefore, the same rationale which convinced us that the federal courts have jurisdiction to consider conciliation agreements between employers, employees, and the EEOC compels us to hold that these courts have the power to enforce such agreements. As the court said in *George Banta Co. v. NLRB,* 604 F.2d 830, 838 (4th Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), upholding the enforcement of settlements under the NLRA: "To permit a party to accept the benefits of a settlement agreement, and then withdraw from that agreement without complying with its corresponding obligations, would subvert the settlement process." Nothing compelled Safeway to reach this agreement. The company was free to refuse the EEOC's attempts at compromise and take its chances in a Title VII lawsuit. Having agreed to provide relief to the charging parties, however, Safeway is obligated to perform its promise.[13]

■ 2. Safeway additionally argues that, even if the conciliation agreement is subject to specific enforcement, the district court cannot order compliance until it has made findings that the company did in fact engage in discriminatory practices. Safeway contends that ordering "Title VII remedies" such as backpay and retroactive seniority, in the absence of such an independent finding of discrimination, would transform the EEOC's determination of "probable cause" into a "binding adjudication" of a Title VII violation.

A finding of discrimination by the court as a condition precedent for any award of relief under Title VII is required, of course, in an ordinary enforcement action brought under the statute.[14] In the immediate case, however, the district court was not ordering relief for a Title VII violation. Rather, it was enforcing an agreement voluntarily entered into by the parties pursuant to Section 706(b) of the statute. Thus, the only restrictions upon the court's authority to require that the parties fulfill their obligations under the conciliation agreement are those derived from the agreement itself and the principles of contract law. So long as regular contract rules are satisfied and so long as enforcement of the agreement does not conflict with the parties' individual rights or the purposes of Title VII, the contract is specifically enforceable. *See Fulgence v. J. Ray McDermott,* 662 F.2d 1207 (5th Cir.1981).

This conclusion has been assumed by courts enforcing conciliation agreements.

union interruption of its efforts to effectuate the agreements, the agency signed an addendum agreement which gave Safeway a two year additional period. Safeway's intent to breach did not become apparent until the expiration of this period. Thus, the effect of signing a conciliation agreement would have been to delay an enforcement suit by over three years.

13. This obligation on Safeway or any employer is, of course, restricted by the necessity that the promises contained in the conciliation agreement not conflict with the statutory provisions of Title VII or the constitutional rights of the parties involved. *See infra* pp. 576–580.

14. At trial on a Title VII claim of discrimination, the EEOC's findings, although entitled to weight, are not dispositive. *EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809, 813 (8th Cir. 1979).

*See Southbridge Plastics Division, W.R. Grace & Co. v. Local 759, Intl. Union of the United Rubber, Cork, Linoleum and Plastic Workers of America,* 565 F.2d 913 (5th Cir. 1978); *EEOC v. Contour Chair Lounge Co.,* 596 F.2d 809 (8th Cir.1979).[15] The district court was not giving disproportionate weight to the findings of the EEOC because it was merely enforcing an agreement made voluntarily by Safeway.

■ 3. Finally, Safeway urges that it reserved the right to contest the charges of discrimination by virtue of a clause in the conciliation agreement in which the company expressly did not concede violation of Title VII.[16] Safeway points to this clause as evidence of its right in the present case to contest guilt of discriminatory practices. We have construed similar provisions in consent decrees as barring the necessity for litigation of allegations of discrimination in later enforcement proceedings, except as to future suits seeking additional relief. *United States v. City of Alexandria,* 614 F.2d 1358, 1365 n. 15 (5th Cir.1980). Although Safeway vigorously argues that a conciliation agreement differs from a consent decree and therefore case law interpreting one cannot be applied to the other, it does not articulate any reason why any differences should justify differing interpretations of such a clause. In both the conciliation agreements and in consent decrees, the defendant employer relinquishes its right to litigate the issue of discrimination in exchange for the assurance that it has avoided the consequences which would be imposed by a judicial finding of discrimination. An employer in either situation cannot accept the benefits of its bargain and ignore its corresponding obligation.

We also reject Safeway's contention that the failure of the district court to make findings on the underlying claim deprived it of its due process right to litigate the allegations of discrimination. Under the EEOC's conciliation procedure an employer is notified of the allegations against it and the Commission's subsequent finding. When it then voluntarily signs a conciliation agreement and is afforded a trial on the issue of whether it breached that agreement, the employer has clearly received all the process that is due.

We summarize our holdings as to Safeway's claims: We find that a district court can order that a party perform the promises it made in a conciliation agreement without an independent determination that discriminatory practices have, in fact, occurred. It would be manifestly illogical to recognize that Congress had selected conciliation as the primary means of achieving compliance with the Act, and at the same time to interpret the statute so that employers and unions are free to breach such agreements with impunity. If a trial *de novo* or a finding on the merits were required before any voluntary agreement to resolve discrimination claims could be enforced, conciliation agreements would be rendered worthless as a means of securing compliance with Title VII.

### C. The Addendum Agreement

■ The district court found that Safeway had breached the conciliation agreement. In so ruling, the court determined that the addendum agreement, under which the charging employees agreed to retain their preconciliation agreement seniority dates in exchange for Safeway's promise to

---

**15.** Safeway argues that, in *Southbridge Plastics,* this Court "intimated" that the district court should not enforce an EEOC conciliation agreement unless it independently determined that an unlawful employment practice had been committed. The section of that opinion cited by Safeway in support of this argument, however, does not relate to the enforceability of conciliation agreements in general, but only to those situations where the agreement has violated the terms of a union's collective bargaining agreement and the EEOC is undertaking to enforce the agreement against the non-

signing union, as in the case *sub judice.* Whether a trial *de novo* is required where the agreement violates collective bargaining terms is a separate issue which is the focus of our discussion in Section II.

**16.** The relevant provision in the agreement read: "[i]t is understood that this agreement does not constitute an admission by [the company] of any violation of Title VII of the Civil Rights Act of 1964, as amended."

protect them from economic harm if they were laid off because of those seniority dates, was not intended permanently to replace the obligations in the original conciliation agreement. Rather, the district court found that the addendum was intended to "provide time for Safeway to negotiate with Local 745 and implement the agreed retroactive seniority dates at the end of the term of the addend[um] with the support of the union if possible." Safeway argues that this finding was clearly erroneous. Specifically, the company claims that it was excused from providing retroactive seniority to three of the charging parties[17] because it fulfilled its obligations under the addendum agreement. The company's position is that it agreed to protect the men from layoffs in exchange for their agreement to waive any claim to the seniority dates of the original conciliation agreements.

We must disagree. Considerable evidence was presented at trial concerning the negotiation between the parties which preceded the signing of the addendum.[18] Two commission officials who participated in the negotiation testified at trial that the discussions with Safeway officials focused on how to provide additional time in which Safeway could resolve its difficulties with the Union.[19] Safeway's employee relations director admitted that he never told the EEOC negotiators that Safeway intended for its obligations to end after expiration of the two year period. Also, the charging

parties testified that their agreement to the addendum was based on their understanding that after the two year period they would receive their promised seniority dates. Moreover, there is no language in the addendum itself to indicate an intention to supersede the original agreement for a period longer than the two years specified.

In view of this evidence, we cannot hold as clearly erroneous the district court's finding that the addendum agreement was intended only to allow Safeway a two year grace period during which it could solve its problems with the Union. Once Safeway refused to award retroactive seniority at the end of that period, the court was correct in finding that a breach had occurred.

## II. THE UNION'S CLAIMS

### A. *The Conciliation Agreement and the Collective Bargaining Contract*

The Union argues that the district court erred in ordering specific performance of the portion of the conciliation agreement which provided for retroactive seniority. Specifically, the Union claims that assignment of a seniority date to the charging parties other than the date on which they were hired[20] violated the seniority provisions contained in the collective bargaining agreement between Safeway and the Union, and thus cannot be enforced in the absence of either the Union's consent or a judicial determination that the underlying

---

**17.** This argument does not apply to the claims of Willis Taylor because Taylor never signed the addendum agreement.

**18.** Use of such testimony does not violate the parol evidence rule, which prohibits use of extrinsic evidence to vary or contradict the terms of an integrated contract. The rule does not exclude evidence which would aid in interpreting the meaning of the contract. *Corbin on Contracts,* § 543 at 499, 516 (West 1952).

**19.** The addendum provided that Safeway would protect the named employee from economic loss resulting from a layoff for a period of two years. It stated that Safeway's "inability to recognize the [earlier seniority] date for bidding purposes is based upon its reasonable fear of violence and threats of economic retaliation."

**20.** Faison's seniority date under the original conciliation agreement was April 8, 1975, the date he applied for the position of truck driver. Faison was hired on June 24, 1975. Rodriguez was assigned a seniority date of October 3, 1973, which was the date he applied for the position of warehouseman and order filler. Rodriguez was hired March 22, 1976. Cantu applied for the same position on November 5, 1973. He was assigned that date for seniority purposes, but was not hired until March 28, 1976. Taylor applied for a promotion to a truck driver position on April 7, 1972, and was promoted on August 4, 1974. He was assigned a seniority date of May 22, 1972, which corresponded with the date Safeway first promoted another employee to that position.

charges of discrimination are true. The EEOC contends that the order to grant retroactive seniority was proper, and urges that we affirm the court's finding that the conciliation agreement at issue here did not interfere *per se* with the collective bargaining system, but rather "merely ... afforded [the charging parties] their rightful place as specified in the conciliation agreement."

In support of its argument the EEOC relies on several federal court decisions which hold that the award of "rightful place seniority" is a presumptively proper remedy in Title VII cases, and may only be withheld where it will have some unusually adverse impact on incumbent employees. *See Franks v. Bowman Transportation Co.,* 424 U.S. 747, 771, 779 n. 41, 96 S.Ct. 1251, 1267, 1271 n. 41, 47 L.Ed.2d 444 (1976); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 347, 97 S.Ct. 1843, 1860, 52 L.Ed.2d 396 (1977). The Union does not dispute the firmly established proposition of *Franks* that an employee who is the victim of unlawful employment discrimination may be made whole by an award of retroactive seniority, even though such relief may violate seniority provisions contained in the collective bargaining agreement between the offending employer and a union. Rather, the Union contends that such relief cannot be ordered, over a union's objection, where the union has had no opportunity to participate in an adjudication that a Title VII violation has occurred.

We agree. In each of the cases cited by the EEOC, the unions involved were afforded the opportunity to participate in proceedings to determine the merits of discrimination charges, whether the charging parties were entitled to relief, and whether such relief should include an award which was contrary to the collective bargaining agreement. In those cases the issue of employment discrimination had been judicially resolved with the objecting union having been provided the opportunity to participate in those proceedings. Because of the *judicial* resolution of the discrimination, *Franks* and *Teamsters* permitted awards

which departed from the union's collective bargaining agreement. Where, on the other hand, the district court has granted enforcement of an agreement which would infringe upon the rights of parties who did not participate in that agreement, and where there has never been a finding that discriminatory practices have occurred, the "presumption" in favor of retroactive seniority can no longer be assumed to take precedence over the rights of the non-consenting parties.

Two recent decisions of this Court have involved the circumstances under which a court may enforce a settlement or conciliation agreement which undertakes to affect a union's collective bargaining system in the absence of the union's consent. In *Southbridge Plastics Division, W.R. Grace & Co. v. Local 759, International Union of United Rubber, Cork, Linoleum and Plastic Workers of America,* 565 F.2d 913 (5th Cir. 1978), the EEOC and the employer had entered into a conciliation agreement which provided that certain seniority provisions of the collective bargaining system would be superseded by a quota system. The union objected to enforcement of the conciliation agreement and sought arbitration, pursuant to a standard arbitration clause. The employer then brought an action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking a declaratory judgment that the conciliation agreement overrode any contrary seniority provision contained in the collective bargaining agreement. The union counterclaimed, seeking arbitration.

The district court held that the agreement was binding on the union as well as the employer and that it took precedence over any conflicting provisions of the collective bargaining agreement. On appeal, we reversed. We held that Section 703(h) of Title VII protected the seniority provision of the collective bargaining agreement from attack in the absence of a showing that the union's seniority system was negotiated and maintained with the discriminatory purpose. *See United States v. International Brotherhood of Teamsters, supra,* 431

U.S. at 328 n. 30, 97 S.Ct. at 1851 n. 30. The Court explained that the terms and conditions of employment, such as seniority, which are agreed to by management and a union, can be overturned on a Title VII challenge "only to the limited extent necessary to comply with that statute." 565 F.2d at 916. Where there was no showing of any discriminatory purpose inherent in the seniority system, "wholesale destruction of this system, as authorized by the conciliation agreement, cannot be permitted." *Id.* at 916. The Court further explained that its ruling did not preclude an award of retroactive seniority to employees alleging employment discrimination so long as the employee sought such an adjudication "through the traditional Title VII route". *Id.* at 917.

Our other recent decision is *United States v. City of Miami,* 664 F.2d 435 (5th Cir.1981) (en banc). In that case, the United States and the City of Miami entered into a consent decree that made significant alterations and changes in a collective bargaining agreement which existed between the city and the defendant union.[21] The district court approved the decree over the objections of the union protesting the changes the decree made in its collective bargaining agreement. Sitting *en banc,* we modified the decree by deleting from it those provisions which conflicted with the union's collective bargaining system. We acknowledged the importance of voluntary settlement to the goal of eliminating employment discrimination, but concluded that "a party potentially prejudiced by a decree has a right to a judicial determination of the merits of its objection. The party is prejudiced if the decree would alter its contractual rights...." 664 F.2d at 447. We explained, as we had in *Southbridge,* that the contested relief could be awarded if the United States on remand proved that discrimination, "the necessary predicate for relief", had taken place. *Id.* at 448.

A recent decision of the Supreme Court, *W.R. Grace & Co. v. Local Union 759, Inter-*

*national Union of the United Rubber, Cork, Linoleum and Plastic Workers of America,* —— U.S. ——, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), further bolsters our reasoning in *Southbridge* and *City of Miami.* There the EEOC and employer had entered into a conciliation agreement which "nullified" the collective bargaining agreement seniority provisions. The union did not join in the conciliation process. The Supreme Court stated that "[a]bsent a judicial determination, the Commission, not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent." The Court explained that to allow otherwise "would undermine the federal labor policy that parties to a collective bargaining agreement must have reasonable assurance that their contract will be honored." *Id.* (Citation omitted).

The EEOC attempts to distinguish this authority by arguing that the conciliation agreement at issue here does not result in the "wholesale destruction" of an existing collective bargaining agreement between an employer and its employees as did the agreements in *Southbridge* and *City of Miami.* Rather, in the instant case, the seniority system remains "entirely intact" with the charging parties being afforded "merely their rightful place" within that system. We must reject this argument. While the effect upon the collective bargaining system here may well be less pronounced than that in the earlier cases, we cannot agree that a difference in the degree of conflict with the collective bargaining structure, beyond de minimus, can affect our ultimate decision. Were we to accept the Commission's argument, we would in essence adopt a rule which recognized gradations in the rights of a party to due process. Where a third party's rights are affected *a lot,* he would have a right to a judicial determination of the merits of his objections. But where a third party's rights are lesser affected, terms of an agreement between two other parties could be imposed upon him in spite of his objections and in the absence of

---

**21.** The decree created a quota system, changed the civil service testing and promotion system in the existing union contract, deferred pensions, and instituted an affirmative action plan.

an opportunity to state those objections in court.

We cannot countenance such a result. There is no question that awarding the charging parties a seniority date which is other than the date on which they began work displaces others on the seniority roster and constitutes a violation of the collective bargaining contract. Section Five of that contract clearly states that employees are assigned as their seniority dates the dates on which their employment in the classification commenced. As such, it cannot be imposed upon the employees of the company over the Union's protest without a trial on the merits.[22]

Nor is our opinion made doubtful by the EEOC's emphasis on the primacy of conciliation to the resolution of employment discrimination claims. We agree that conciliation is the preferred method of resolving Title VII claims. In fact, our analysis in Section I is predicated upon that recognition. And we are aware of the Commission's argument that a consequence of our holding today will be that a union has a "veto" over any portion of a conciliation agreement which violates its collective bargaining contract with an employer, potentially undermining the role of these voluntary agreements. If requiring that the EEOC and an employer must obtain a union's consent before "agreeing" to terms which impinge upon the union's collective bargaining agreement mitigates the Commission's ability to effectuate conciliation agreements, such a restriction upon the Commission's authority is required by law. While Title VII expresses an important national policy, it does not exist in a vacuum. The national labor policy strongly undergirds collective bargaining when the employees want it. National Labor Relations

Act, 29 U.S.C. §§ 151 et seq. The terms and conditions of employment are to be shaped by the employer and the exclusive bargaining representatives of its employees when the employees elect to do so. The words of Judge Gee in his concurring opinion in *City of Miami* are appropriate:

> And while it is well and very well to extol the virtues of concluding Title VII litigation by consent, as do our brethren—a sentiment in which we concur—we think it quite another to approve ramming a settlement between two consenting parties down the throat of a third and protesting one, leaving it bound without trial to an agreement to which it did not subscribe. If this is permitted, gone is the protester's right to appear in court at a trial on the merits, present evidence, and contend that the decree proposed is generally infirm—as imposing unconstitutional or illegal exactions—so that it should not be entered *at all* or so as to bind *any* party or the affected third party. (Emphasis in original)

664 F.2d at 451.

We find that the district court erred in its conclusion that the award of retroactive seniority in this case had no legally significant impact on the collective bargaining agreement in existence between the company and the Union.[23] The right of the other employees to a position on the company's seniority roster which corresponded to the date they began work was infringed by the court's order, and therefore the Union had a right to a judicial determination of the merits of its objections. If the EEOC seeks a remedy which would infringe upon the rights of a third party, it cannot rely on its "agreement" with another party to do so. Rather it must demonstrate the propriety

---

22. As the result of Safeway's assignment of retroactive seniority dates to Rodriguez and Cantu, those men advanced ahead of approximately fifty other warehousemen employees to more favorable positions on the warehouseman seniority roster. Taylor advanced ahead of approximately 39 other truck drivers, and Faison ahead of approximately 29 truck drivers to a more favorable position in the trucking department seniority roster.

23. That the district court's conclusion was one of law is not disputed on appeal. As we explained in *City of Miami,* "[i]t is difficult to envision an issue more purely legal than that of whether one written agreement, the consent decree, conflicts with another written compact, the existing collective bargaining agreement." 664 F.2d at 451 n. 7.

of such relief in a judicial proceeding at which the third party is allowed to present its evidence and voice its objection. Conciliation is, by its own terms, a voluntary process. The involved parties are free to agree, and conversely, free not to agree. If they choose to agree, then the goal of voluntary compliance has been achieved. If they choose not to agree, then "conciliation" cannot alter the terms of a collective agreement. To do so, there must be an adjudication that discrimination has occurred.

### B. *Attorneys' Fees*

█ The Union finally argues that the trial court erred in failing to award attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k). Specifically, it contends that because the district court did not find the Union responsible for the threats made to plaintiffs and to Safeway, and thus did not find it necessary to enjoin the Union from interfering with the enforcement of the conciliation agreements, the Union was entitled to attorneys' fees as the prevailing party in the action.

█ We do not accept the Union's contention. Even were we to accept the Union's characterization of itself as the prevailing party, it is clear that an award of attorneys' fees to a prevailing party in an action under this subchapter is a matter committed to the discretion of the district court. We overturn such a decision on review only if there is an abuse of that discretion. *Merriweather v. Hercules, Inc.,* 631 F.2d 1161 (5th Cir.1980). More important, while a prevailing plaintiff usually recovers fees under this section, a prevailing defendant can recover such fees only if the claim against it was "without foundation, unreasonable, frivolous, meritless or vexacious." *Crawford v. Western Electric Co.,* 614 F.2d 1300, 1321 (5th Cir.1980); *Durant v. Owens-Illinois Glass Co.,* 656 F.2d 89 (5th Cir.1981); *Lopez v. Aransas County Independent School District,* 570 F.2d 541 (5th Cir.1978).

The district court recognized the possibility of Union opposition when it stated that, if it were later brought to the court's attention that the Union had interfered with implementation of its order, "such interference will be dealt with expeditiously and appropriately." The EEOC was entirely proper in assuming that the Union, if not joined in the action, might interfere with the court's enforcement of the agreements. Conversely, there was no demonstrable evidence of bad faith on the commission's part in bringing suit, nor were its legal theories so empty and frivolous as to imply a vexacious motive. Consequently, the district court's denial of attorneys' fees to the Union was proper and not an abuse of its discretion.

### III. CONCLUSION

We find that jurisdiction exists in federal courts under 42 U.S.C. § 2000e–5(f)(3) over suits brought by the EEOC to enforce conciliation agreements. We also find that Title VII generally authorizes enforcement of those agreements by the federal courts without the need for an independent determination by the court on the underlying charge of discrimination. Enforcement of these agreements is not permissible, however, as to those who have not consented to their provisions and who are prejudiced by their terms. Because we find that the award of seniority dates called for in the conciliation agreement at issue violated the terms of the collective bargaining contract between the Union and Safeway, such retroactive seniority cannot properly be granted in the absence of either the Union's consent or an adjudication, in which the Union has the opportunity to participate, on the merits of the discrimination claims. The district court's decree establishing seniority dates differing from those provided for in the collective bargaining agreement cannot stand. Accordingly, those portions of the judgment which relate to the awarding of pre-hire seniority dates to the employee claimants are reversed. The court's award of backpay to each of the claimants is affirmed.

AFFIRMED IN PART, REVERSED IN PART.